# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| **Alexander E. Jones** | § | **Bankruptcy Case No. 25-33553** |
| **Debtor** | § | |
| | § | |
| | § | |
| **ALEXANDER E. JONES AND** | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | |
| *Appellants,* | § | |
| | § | **Civil Action No. 4:25-cv-05553** |

On Appeal from the United States Bankruptcy Court
for the Southern District of Texas, Houston Division
Cause No. 25-05553

## CORRECTED[1]
## APPELLANTS' BRIEF

| | |
|---|---|
| Shelby A. Jordan | Ben C Broocks |
| Antonio Ortiz | St. Bar No. 03058800 |
| **Jordan & Ortiz, P.C.** | Federal Bar No. 94507 |
| State Bar No. 11016700 | William A. Broocks |
| Federal Bar No. 2195 | St. Bar No. 24107577 |
| 500 N. Shoreline, Suite 804 | Federal Bar No. 3759653 |
| Corpus Christi, Texas 78401 | **Broocks Law Firm, PLLC** |
| Telephone: (361) 884-5678 | 248 Addie Roy Road, Suite B301v |
| Fax: (361) 888-5555 | Austin, Texas 78746 |
| Email: sjordan@jhwclaw.com | Telephone: (512) 201-2000 |
| aortiz@jhwclaw.com | Fax: (512) 201-2032 |
| copy to: cmadden@jhwclaw.com | Email: bbroocks@broockslawfirm.com |
| | wbroocks@broockslawfirm.com |

## ATTORNEYS FOR APPELLANTS

---

[1] This Corrected Brief makes a single correction to page 30 of Appellants' Opening Brief, replacing an incorrect quotation and citation.

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................i-iv

INDEX OF AUTHORITIES.............................................................v-vii

APPENDIX.............................................................................................viii

REFERENCES ..................................................................................... 1

I. CORPORATE DISCLOSURE STATEMENT ..................................... 1

II. JURISDICTIONAL STATEMENT ...................................................... 1

III. ISSUES PRESENTED FOR REVIEW ................................................ 3

IV. PRELIMINARY STATEMENT.................................................. 4

V. FACTUAL BACKGROUND ...................................................... 6

    A. Brief Background of Underlying Facts.............................................. 6

    B. Bankruptcy Background Matter....................................................... 7

    C. The Texas and Connecticut Plaintiffs Seek a Turnover
       Order and Receiver in Texas Case.................................................. 11

    D. The Connecticut and Texas Turnover Orders Are Appealed...... 16

    E. The Bankruptcy Court Issues a Void Advisory Opinion.............. 18

VI. STANDARD OF REVIEW .................................................... 19

VII. ARGUMENTS .......................................................................... 20

    A. THE BANKRUPTCY COURT INTENDED THAT THE *JUNE VESTING
       ORDER* WOULD CONVEY ALL FSS ASSETS TO THE JONES
       CHAPTER 7 ESTATE SO THEY COULD BE SOLD................................ 20

B. THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(A) APPLIES TO THE FSS ASSETS BECAUSE THOSE ASSETS WERE VESTED IN THE JONES CHAPTER 7 ESTATE UNDER § 349(B) AND BECAME PROPERTY OF THE ESTATE UNDER § 541 ............................................................. 31

    1.    Once Vested Under Code §349(b), FSS Assets Became Property of the Estate Under §541 as a Matter of Law ....... 32

    2.    Property of the Estate is Automatically Protected by §362(a) ................................................................. 34

    3.    Actions Taken in Violation of the Automatic Stay Are Void ................................................................. 35

    4.    The Bankruptcy Court's October 1st *No-Vesting Order* is Not an "Interpretation" – It Is a Modification and Nullification of Final Orders ........................................................... 36

    5.    The Bankruptcy Court Was Jurisdictionally Barred from Altering the *Supplemental Vesting Order* During the Texas Plaintiffs' Appeal ............................................. 37

    6.    The October 1st *No-Vesting Order* Is, at Most, an Advisory Opinion ..................................................... 38

    7.    Because the FSS Assets Were Estate Property, the Automatic Stay Remains in Effect ............................... 39

C. THE BANKRUPTCY COURT ERRED IN HOLDING THAT ITS JUNE 21, 2024 *DISMISSAL AND VESTING ORDER* AND SEPTEMBER 25, 2024 *SUPPLEMENTAL VESTING ORDER* DID NOT TRASNFER AND VEST FSS ASSETS IN THE JONES CHAPTER 7 ESTATE ....................................... 39

    1.    Section 349(b)(3) Authorized Vesting at Dismissal – and Only at Dismissal ............................................. 40

2. The *Supplemental Vesting Order* Was a Clarification, Not a Conditional Sale Order .................................. 41

3. The *Supplemental Vesting Order* Became Final and Cannot Be Collaterally Undone ............................ 42

4. The October 1st Ruling Contradicts the Bankruptcy Court's Prior Orders ............................................. 44

D. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN REFUSING TO REQUIRE THE TRUSTEE TO CONDUCT A LIVE AUCTION OF FSS ASSETS ......................... 44

1. A Chapter 7 Trustee Is a Fiduciary for The Benefit of Creditors ............................................. 45

2. The Refusal to Enforce an Auction Was Arbitrary ............ 46

3. The Court's Refusal Undermines the Purpose of § 349(b) Vesting ............................................. 47

E. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING APPELLANTS' MOTION FOR RECONSIDERATION UNDER BANKRUPTCY RULE 7054(b) INCORPORATING FEDERAL RULE OF CIVIL PROCEDURE 54(b) ..................... 47

1. Legal Standard Governing Reconsideration of Interlocutory Orders ............................................. 47

2. The October 1st Order Rests on Clear Legal Error ................. 48

3. Failure to Reconsider Produces Manifest Injustice ................. 49

4. The October 1st Order Cannot Function as a Retroactive Stay-Lifting Order ......................................... 50

5. To The Extent the October 1st No-Vesting Order Attempts to Modify the *Supplemental Vesting Order*, It Is Void .............. 51

**VIII. CONCLUSION AND PRAYER** ......................................................... **51**

**Certificate of Service** ....................................................... **55**

**Certificate of Compliance** ........................................................ **56**

# INDEX OF AUTHORITIES

## Cases

*Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024) ...................... 20, 36

*Austin v. Kroger Tex.*, *L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) .............. 48, 50

*Brown v. Chesnut (In re Chesnut)*,
422 F.3d 298, 301 (5th Cir. 2005) ........................................ 17, 20, 32, 34, 35

*Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) ................................... 2

*Cadle Co. v. Mims (In re* Moore), 608 F.3d 253, 263 (5th Cir. 2010) .......... 45

*Bunch v. Hoffinger Indus. Inc*.,
292 B.R. 639, 642 (B.A.P. 8th Cir. 2003) .................................................... 49

*Fields v. Pool Offshore, Inc*., No. 97-3170, 1998 WL 43217,
at *2 (E.D. La. Feb. 3, 1998) .......................................................................... 49

*Flast v. Cohen,* 392 U.S. 83, 96 (1968) ........................................................ 38

*Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982) .. 37, 42, 43

*Gluckstadt Holdings*, *L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*,
922 F.3d 323, 326-27 (5th Cir. 2019) ........................................................... 45

In *re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) ....................................... 44

*In re First South Sav. Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987) ...... 20, 48, 49

*In re Jolly Props*., No. 09-30872-H4-7, 2009 Bankr. LEXIS 2162
(Bankr. S.D. Tex. Aug. 11, 2009) ................................................................. 45

*In re Mirant Corp.*, 440 F.3d 238, 245 (5th Cir. 2006) .......................... 19, 34

*In re Transtexas Gas Corp. v. TransTexas Gas*,
303 F.3d 571, 579 (5th Cir. 2002) ............................................. 10, 11, 13, 17

*Kalb v. Feuerstein*, 308 U.S. 433, 438–40 (1940) ........................................... 34

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)................................................................. 48

*Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) ................. 35

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009)..................... 38, 43

*Viegelahn v. Lopez (In re Lopez),* 897 F.3d 663, 669 (5th Cir. 2018).. 2, 5, 30

*Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).................................... 20

*Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 141-42 (2d Cir. 2005) ......................................................................... 36

*York v. State*, 373 S.W.3d 32, 39-40 (Tex. 2012).................................. 17, 35

## **Statutes**

Bankruptcy Rule 7054(b) ........................................................................... 4, 47

Federal Rule of Civil Procedure 60 ........................................... 17, 38, 41, 44

Federal Rule of Bankruptcy Procedure 8002................................................. 2

Federal Rule of Bankruptcy Procedure 8012................................................. 1

Federal Rule of Appellate Procedure 26.1 .................................................... 1

Federal Rule of Civil Procedure 54(b)......................................... 4, 47, 48, 50

Fed. R. Civ. Proc 59(e) ......................................................................... 38, 48

Fed. R. Civ. Proc 60(b) ................................................................... 17, 48, 51

28 U.S.C. § 158(a)(1) ................................................................................... 1

11 USCS §307 ............................................................................................ 22

11 U.S.C. § 349................................................................ 39, 40, 42, 46, 48, 52

11 U.S.C. § 349(b)(3) ............................................................ 39, 40, 41, 51

11 U.S.C. § 362(a) ............................................................ 3, 17, 20, 34, 39, 52

11 U.S.C. § 541................................... 2-4, 9, 20, 24, 27-30, 32-34, 39, 44, 52

11 U.S.C. § 541(a)(1) ............................................................ 23, 32

Section §721 ........................................................................ 19, 31

## **APPENDIX**

| Appendix No. | Description |
|---|---|
| Appendix A | 6/21/24 Order Dismissing Case (ROA.000156) |
| Appendix B | 9/25/24 Order Supplementing Order Dismissing Case (ROA.000285) |
| Appendix C | 2/5/25 Hearing Transcript (ROA.003316-3335) |
| Appendix D | 6/5/25 Hearing Transcript (ROA.003436-3506) |
| Appendix E | 10/1/25 Order Confirming that FSS Assets Are Not Subject to the Automatic Stay (ROA.006748-6749) |

## REFERENCES

Appellants will use the Record on Appeal number that has been assigned to the documents delivered by the Clerk's Office in these underlying appeals by specifying [ROA.XXX]. Documents located in the Appendix will be cited using [App.XXX].

## I.    CORPORATE DISCLOSURE STATEMENT

Appellants are Alexander E. Jones ("**Jones**") and his wholly owned company, Free Speech Systems, LLC ("**FSS**").

Pursuant to Federal Rule of Bankruptcy Procedure 8012 and Federal Rule of Appellate Procedure 26.1, Appellant FSS states that it is a privately held limited liability company with no parent corporation and no publicly held corporation owns 10% or more of its membership interests.

## II.    JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 158(a)(1), which grants district court's jurisdiction over appeals from final judgments, orders, and decrees of its unit, the bankruptcy courts.

On October 1, 2025, the Bankruptcy Court in the Alexander E. Jones Chapter 7 Estate case  (the "Jones Chapter 7 Estate"), issued an erroneous advisory opinion (the "*No-Vesting Order*") [ROA.006748-6749] that the assets of FSS (the "FSS Assets") were not vested in the Jones Chapter 7 Estate on the day of FSS's

bankruptcy was dismissal. The Bankruptcy Court issued this advisory opinion in spite of two earlier Orders that explicitly stated the opposite, namely an order entered on June 21, 2024 ("**June Vesting Order**")[2] and a second order entered in September 2024 ("**Supplemental Vesting Order**") clarifying the intent that the *June Vesting Order* conveyed FSS Assets to the Jones Chapter 7 Estate[3] such that those assets in fact did become property of the Jones Chapter 7 Estate under 11 U.S.C. § 541.

Among other errors, in issuing the errant *Non-Vesting Order*, the bankruptcy court directly contradicted Fifth Circuit precedent that gives the term "vest" used in the *Supplemental Vesting Order* and in §349(b) its ordinary meaning of "ownership." *Viegelahn v. Lopez (In re Lopez),* 897 F.3d 663, 669 (5th Cir. 2018) (holding "vest" means, in relevant part: to confer ownership of property on a person).

The also *No-Vesting Order* also erroneously, but conclusively, determined the scope of the Jones Chapter 7 Estate's property and the applicability of the automatic stay to protect such property from seizure. It resolves a discrete legal issue central to administration of the Jones Chapter 7 Estate and is therefore final and appealable. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015). Appellants timely filed their Notice of Appeal pursuant to Federal Rule of Bankruptcy Procedure 8002.

---

[2] App. A, ROA.000156

[3] App. B, ROA.000285

## III.   ISSUES PRESENTED FOR REVIEW

1.      Whether the Bankruptcy Court committed reversible legal error in concluding that the automatic stay under 11 U.S.C. § 362(a) does not apply to the FSS Assets Ordered "deemed vested" pursuant to Bankruptcy Code §349 (the "Code") in the Jones Chapter 7 Estate, because the FSS Assets never became "property of the estate" under Code §541 of the Code, notwithstanding the *Original Vesting Order* and the *Supplemental Vesting Order*.  [*See*, ROA.000285].

2.      Whether the Bankruptcy Court erred in holding that its  June 21, 2024 *Original Vesting Order* that dismissed the FSS Chapter 11 case and "deemed vested" the FSS Assets in the Jones Chapter 7 Bankruptcy Estate (combined with the Court's September 25, 2024 *Supplemental Vesting Order* and entered pursuant to 11 U.S.C. § 349(b)(3) *did not*, in fact, transfer and "vest" the FSS Assets in the Jones Chapter 7 estate (the *No-Vesting Order*).

3.      Whether the Bankruptcy Court committed error and abused its discretion by twice ordering the BK Trustee to conduct a regular bankruptcy public auction of the vested FSS Assets (two orders that would make no legal or practical sense if the BK Trustee did not own the FSS Assets it was ordered to auction), but then, after the BK Trustee refused to conduct the bankruptcy auctions according to the Code and regular practice: (i) simply refusing to require the BK- Trustee to conduct the ordered bankruptcy public auctions; and (ii) ultimately ruling that the

3

Trustee was not vested with title to the FSS Assets (and thus no "automatic stay" applied to protect the FSS Assets as property of the Jones Chapter 7 Estate under § 541 of the Code).

4.    Whether the Bankruptcy Court abused its discretion in denying Appellants' Motion for Reconsideration of the *No-Vesting Order* under Bankruptcy Rule 7054(b), incorporating Federal Rule of Civil Procedure 54(b).

## IV.    PRELIMINARY STATEMENT

This appeal addresses the validity of a bankruptcy court order (the "***No-Vesting Order***"), that has profound consequences in the bankruptcy filed in the wake of the largest defamation verdicts in the history of American jurisprudence.

After being hit with almost $1.5 Billion in damages in two identical defamation cases, FSS, the company owned by conservative news commentator Alex Jones, filed bankruptcy on December 2, 2022. Jones himself followed with his own bankruptcy shortly thereafter. Following this, a year later the bankruptcy court dismissed FSS's bankruptcy but simultaneously transferred FSS's assets to Jones's bankruptcy estate pursuant to §349 of the Code. The order that first accomplished that transfer was dated June 21, 2024 (the "*June Vesting Order*").

Three months later, in September 2024, the bankruptcy court reconfirmed that in entering the *June Vesting Order*, it intended at that time -- *i.e.* June 21, 2024 -- to actually vest FSS's assets in the bankruptcy estate of Jones pursuant to Code §349.

The order reconfirming the prior Code §349 vesting of in the Jones estate was dated September 25, 2024 referenced herein as the *Supplemental Vesting Order*.

The *Supplemental Vesting Order* was appealed by the Texas Plaintiffs to the District Court and that appeal was later dismissed, making both the *Supplemental Vesting Order* and the *June Vesting Order* which it supplements, final and not subject to later direct or collateral attack which the *No-Vesting Order* violates.

The Fifth Circuit has given the term "vest" used in the *Supplemental Vesting Order* and in Code §349(b) its ordinary meaning of "ownership." *Viegelahn v. Lopez (In re Lopez)*, 897 F.3d 663, 669 (5th Cir. 2018) (holding "vest" means, in relevant part: to confer ownership of property on a person). There exists no law providing for the cancellation of a prior "vesting" final court order.

Based on these first two (2) orders, after literally millions of dollars and countless hours of time have been spent by all parties, in October 2025, in what amounts to an advisory opinion that explicitly contradicts the *June Vesting Order* and the *Supplemental Vesting Order*, the bankruptcy court shockingly issued what is herein called the *No Vesting Order* stating FSS Assets were never transferred to the Jones Chapter 7 Estate.

The *No Vesting Order* must be reversed. If allowed to stand, millions of dollars will have been spent attempting to sell assets by a BK Trustee who had no right to sell those assets because the Trustee didn't own them. FSS will have been

operated under the supervision of a BK Trustee who had no right to supervise those operations. And these are but tips of the iceberg of the implications if the *No-Vesting Order* is not overruled and allowed to stand.

## V.     FACTUAL BACKGROUND

### A. BRIEF BACKGROUND OF UNDERLYING FACTS

This appeal involves Free Speech Systems LLC (previously, "FSS"), a company wholly owned by Alex Jones (Jones and FSS are sometimes herein collectively referred to as "Jones") and involves the bankruptcies filed because of two of the largest defamation verdicts in the history of the United States.

On January 12, 2023, a Travis County District Court rendered a judgment awarding Neil Heslin and his former spouse, Scarlett Lewis (the "Texas Plaintiffs"), a total of approximately $49,300,000 against Jones and FSS (the "Texas Judgment"). [ROA.004546-4548]. Separately, a state court in Connecticut awarded 15 plaintiffs (the "Connecticut Plaintiffs")[4] a total of approximately $1,400,000,000 against Jones and FSS (the "Connecticut Judgment"). [ROA.004869-4932]. Both the Texas Judgment and the Connecticut Judgment (the "Judgments") were the result of unconstitutional death-penalty default judgments entered in both cases, the effect of which was to judicially decree that everything the Texas Plaintiffs and the

---

[4] The Connecticut Plaintiffs refer to themselves as the "Connecticut Families." It is respectfully submitted that the inclusion of FBI Agent Aldenberg as a plaintiff makes the term "Connecticut Families" inaccurate.

Connecticut Plaintiffs (together, the "Plaintiffs") claimed was true (even though on the face of the pleadings it was clear such was not the case) without any proof as to liability. A damages-only trial followed in each case. The Texas Judgment is currently on appeal to the Austin Court of Appeals.[5]

### B. Bankruptcy Background Matter

In the process of these judgments being rendered, FSS filed bankruptcy[6] (the "FSS BK Case"). Shortly thereafter, Alex Jones filed bankruptcy as well[7] (the "Jones BK Case"). The Jones BK case was converted to Chapter 7 and Christopher Murray was appointed Chapter 7 Trustee (the "BK Trustee").

As to FSS, however, by order dated June 21, 2024 *June Vesting Order*, FSS's bankruptcy was dismissed. 11 U.S.C. §349(b) states that upon dismissal of a bankruptcy case, all assets of the dismissed bankruptcy applicant at that time re-vest back to the dismissed bankruptcy applicant, unless the bankruptcy court orders otherwise:

---

[5] The Connecticut Judgment was generally affirmed on appeal, with the exception that the claim arising out of the Connecticut Unfair Trade Practices Act was dismissed. The Connecticut Supreme Court refused to review the case, and the U.S. Supreme Court denied certiorari.

[6] Chapter 11, Case No. 22-60043, In re Free Speech Systems, LLC.

[7] Chapter 11, Case No. 22-33553, styled In re: Alexander E. Jones.

## § 349. Effect of dismissal

***

**((b)** Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]—

   ***

   **(3)** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title

Invoking Code §349(b), the *June Vesting Order* determined that FSS Assets would not re-vest in FSS but rather were vested in the Jones Chapter 7 Estate to be administered by the BK Trustee.  As part of the Jones Chapter 7 Estate, FSS's assets were thus held by the BK Trustee and protected by the automatic stay provisions of Code §362.

The Connecticut Plaintiffs and the Texas Plaintiffs  were at that time at odds with one another in collecting their respective judgments. Upon entry of the *June Vesting Order*, the Texas Plaintiffs filed a turnover application in Texas state court on their Texas Judgment [ROA.006540-6547], which was halted by the bankruptcy judge and the action removed to the bankruptcy court.

The BK Trustee thereafter filed a motion for bankruptcy court approval to sell the FSS Assets the Jones Chapter 7 Estate held.  [ROA.000784-840].  The United States Trustee ("UST") objected to the BK Trustee for the Jones Estate selling FSS Assets. [ROA.000841-844].  The reasoning of the UST was simply that one cannot sell what one does not own, and the UST was concerned that the Jones Chapter 7

Estate may not technically "own" the FSS Assets that were to be sold. This objection resulted in a bankruptcy court hearing on September 25, 2024 evidenced by a transcript (the "September 2024 Transcript") [ROA.000881-911] which in turn resulted in the *Supplemental Vesting  Order*.

By its terms the *Supplemental Vesting Order* expressly  terms "supplements" the *June Vesting Order*.  The *Supplemental Vesting Order* made clear that the *June Vesting Order* was intended to convey all FSS Assets to the Jones Chapter 7 Estate pursuant to Code §349(b), making FSS Assets Code §541 assets of the Jones Chapter 7 Estate and thus covered by the automatic stay imposed by §362.  The *June Vesting Order* and the *Supplemental Vesting Order* are sometimes collectively referred to as the "*Prior Vesting Orders*."

The Texas Plaintiffs immediately appealed the *Supplemental Vesting Order*[8] identifying the appellate issue as the propriety of "retroactively" vesting FSS Assets in the Jones Chapter 7 Estate:

---

[8] That appeal remained in effect until a Stipulation of Dismissal was filed on May 6, 2025.  United States District Court Case No. 24-cv-03882 Dkt. No. 22.   Because the appeal was dismissed, the propriety of the *Supplemental Vesting Order* or a retroactive conveyance, as the Texas Plaintiffs put it, cannot be challenged, directly or collaterally.

<div style="border:2px solid black; padding:10px;">

**STATEMENT OF ISSUES**

1.    Did the Bankruptcy Court err when, without notice, it entered an order [Docket No. 1021]—three months after dismissing the Free Speech Systems, LLC bankruptcy [Docket No. 956]—that retroactively vested all property of former debtor Free Speech Systems, LLC into the bankruptcy estate of Alex Jones?

</div>

The filing of this appeal immediately divested the bankruptcy court of any jurisdiction to alter, amend or modify the *Supplemental Vesting Order. See, In re Transtexas Gas Corp. v. TransTexas Gas*, 303 F.3d 571, 579 (5th Cir. 2002).

After entry of the *Supplemental Vesting Order*, the bankruptcy court entered another order in the Jones Chapter 7 bankruptcy case whose estate now held FSS Assets, granting the BK Trustee of the Jones Chapter 7 Estate permission to sell by auction all FSS's assets as they were part of the Jones Bankruptcy Estate (the "FSS Sale Order"). [ROA.000861-880] The bankruptcy court later denied the resulting sale to a partnership of the Connecticut Plaintiffs and The Onion as proposed by the BK Trustee, because the BK Trustee had perverted the process in an arrangement concocted with the Plaintiffs. [ROA.002485].

After the first failed auction, the bankruptcy court again instructed the BK Trustee to attempt to sell the FSS Assets, which he could do by virtue of the Prior Vesting Orders. Instead of an auction sale, the BK Trustee and Plaintiffs worked out a proposed "settlement agreement" and tendered it for approval to the bankruptcy court on February 4, 2025. [ROA.003210-3242].

As a result, a bankruptcy hearing occurred on February 5, 2025, evidenced by the transcript referred to as the "February 2025 Transcript."[9]  That hearing occurred while the *Supplemental Vesting Order* was on appeal.  At that hearing, the bankruptcy court expressed its frustration with the thwarting of its orders to conduct a sale, and said, in essence, the parties could consider any future use of the *Supplemental Vesting Order* null and void.[10]  Because of the pending appeal, however, these statements and actions themselves were unquestionably void.  *See, Transtexas*, 303 F.3d at 579, which the bankruptcy court noted on the record in the February 2025 Transcript [ROA.003316-3335].

The hearing evidenced by the February 5 Transcript was followed by another hearing on June 5, 2025 evidenced by the "June 5 Transcript"[11] where the bankruptcy court acknowledged that because the Texas Plaintiff's appeal of the *Supplemental Vesting Order* was still pending, it had no jurisdiction over the *Supplemental Vesting Order* and therefore could not have voided, modified, or varied that order at the earlier February Transcript Hearing.  [ROA.003475].

## C. THE TEXAS AND CONNECTICUT PLAINTIFFS SEEK A TURNOVER ORDER AND RECEIVER IN TEXAS CASE

On July 7, 2025, without notice the Plaintiffs jointly filed a turnover

---

[9] App. C, ROA.003316-3335.

[10] This was reiterated in an order on March 19, 2025. [ROA.003352].

[11] App. D, ROA.003436-3506.

application and request for appointment of a receiver in Texas State court regarding the FSS's Assets which were held by the Jones BK Trustee as a part of the Jones Chapter 7 Estate (the "Joint Turnover Motion"). [ROA.006540-6721]. That Joint Turnover Motion sought a turnover order and appointment of a receiver as to FSS Assets, collection efforts on which were now being pursued in some form of partnership, along with the three other Texas Plaintiffs who have yet to try their cases against Jones or FSS, the very arrangement rejected by the bankruptcy court in February 2025. [ ROA.003316-3335].

On August 8, 2025, pursuant to TRAP 24, FSS filed a Notice of Cashier's Check Payable to the Clerk in Lieu of Bond [ROA.004589-4591] (the "Bond"), which was entered by the district clerk that same day and had the effect of suspending enforcement of the Texas Judgment. TRAP 24.1(f).

A hearing on Plaintiffs' Joint Turnover Motion for a turnover/receiver order was scheduled for August 13, 2025 [ROA.003981-3992]. FSS therefore filed appropriate pleadings and attended the August 13 hearing.

Because of the filing of the Bond as to the Texas Judgment, at the August 13, 2025 hearing the Texas Plaintiffs did not formally proceed with their request for turnover/receiver. The Connecticut Plaintiffs did pursue their own request for turnover/receiver against FSS.

At that August 13 State Court hearing, it was brought to the attention of the

Texas trial court that the assets sought by the Plaintiffs were part of the Jones Chapter 7 Estate and not held by FSS and also as such were protected from seizure by the automatic stay provisions of Code §362.

To escape this, the Plaintiffs told the Texas State Court Judge that at the *February 2025 Transcript Hearing*, bankruptcy judge had declared the *Supplemental Vesting Order* void which in some unexplained way re-vested FSS Assets back into the hands of FSS.

Appellants advised the Texas State trial court first, that as a result of the fact that Texas Plaintiffs had appealed the *Supplemental Vesting Order*, the bankruptcy court lost jurisdiction to take any action to nullify the *Supplemental Vesting Order* and as such, it was jurisdictionally impossible for anyone—including the bankruptcy court itself—to have changed or altered the *Supplemental Vesting Order* while it was on appeal. *Transtexas*, 303 F.3d at 579.

Secondly, it was pointed out that in the February 5, 2025 Transcript[12] and in the June 2025 Transcript the bankruptcy court acknowledged that it had lost jurisdiction once the appeal was taken and that statements it had made in the

---

[12] In the February 5 Transcript the Bankruptcy Court acknowledged this jurisdictional limitation at [ROA.003323]:

> THE COURT…I should back up and mention that the (Supplemental Vesting) Order was appealed by the Texas families. I think that matter is still pending.
> MR. JORDAN: It is, Judge.
> THE COURT: I lose jurisdiction over that immediately."

February 2025 Transcript Hearing about voiding the appealed *Supplemental Vesting Order* were themselves void [ROA.003475]. Judge Lopez stating in the June 2025 Transcript:

```
5              The matter was currently pending.  That order was
6    currently pending on appeal at the time, so I couldn't revoke
7    one way or the other, right?  Once bankruptcy, once an appeal
8    is filed, the Court loses jurisdiction over that.  What I
```

```
23   that I sold and so I haven't revoked anything.  I didn't have
24   authority to do it anyway, but to me, putting up another
```

[ROA.003475].

It was further pointed out to the Texas trial court that irrespective of statements the bankruptcy court made about the *Supplemental Vesting Order*, the earlier *June Vesting Order* itself had judicially conveyed FSS Assets to the Jones Bankruptcy Estate pursuant to Code §349(a).

Of note, the Connecticut Plaintiffs themselves had even admitted this when they intervened in the District Court appeal of the *Supplemental Vesting Order*, telling the United States District Court in their intervention that the *Supplemental Vesting Order* merely "clarified" that as of the *June Vesting Order* (which they referred to as the Dismissal Order), FSS Assets were at that time transferred to the Jones Chapter 7 Estate, the Connecticut Plaintiffs stating to the US District Court

14

handling the appeal of the *Supplemental Vesting Order*:

> 14.    On September 25, 2024, the Bankruptcy Court entered the Supplemental Dismissal Order on the FSS docket. (Bankr. Dkt. 1021). This Supplemental Dismissal Order clarified that as of the entry of the original Dismissal Order, all property of FSS was deemed to have vested in the bankruptcy estate of its 100% equity owner, Alex Jones, as property of that estate under the control of the Chapter 7 Trustee. *Id.*

[ROA.006158].

It was also pointed out that the Plaintiffs themselves knew these facts because the terms of the very order the Texas State trial court was being asked to sign recited that FSS Assets had been turned over to the Jones Chapter 7 Estate by ***both*** the prior Vesting Orders, her order reading:

> The Court also FINDS that Judgment Debtor Free Speech Systems, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts. *See* Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024), No. 22-60043 (Bankr. S.D. Tex.). Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i)    as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee).

15

And this order was entered including the words used above.[13]

It was also pointed out that subparagraph (i) in the Connecticut Turnover/Receiver Order the Texas trial court was signing, made the Turnover Assets subject to the approval of the Jones BK Trustee, and Jones BK Trustee approval would not be included if he did not already have the assets or rights to them.[14]

While it was clear the Texas State trial court was being deceived, the Texas State trial court nevertheless ignored all these points and executed the Connecticut Turnover/Receiver Order and later a virtually identical turnover/receiver order for the Texas Plaintiffs.

### D. THE CONNECTICUT AND TEXAS TURNOVER ORDERS ARE APPEALED

Following entry of the Connecticut and Texas State Turnover/Receiver Orders, they were both appealed to the Austin Court of Appeals. [ROA.0003996-3998].  In both of those appeals, a pivotal issue was, as Plaintiffs characterized it, whether the February 2025 Transcript Hearing had declared the *Supplemental Vesting Order* void, which, they argued, somehow effected a reconveyance of FSS

---

[13] [ROA.006736-6747] To this the Plaintiffs belatedly retorted that this was "an Errant Citation" and an "error in not updating the citation" although they have made no effort to change the order as entered which is now on appeal.

[14] To this, the Texas Plaintiffs argued its inclusion demonstrated the "continuing viability of the June 2024 Order...which is the order...that permitted [the BK Trustee] to dispense assets for the benefit of creditors."  Their own characterization substantiates rather than refutes the point.

Assets by the Jones Chapter 7 Estate back to FSS, thus freeing them from the automatic stay of §362 and making them eligible for turnover to a receiver.

Obviously a key issue in those appeals involves the effect of the appeal of the *Supplemental Vesting Order* and just as importantly, the dismissal of that appeal in May 6, 2025.[15] Whatever the words that were used by Judge Lopez at the February 2025 Transcript hearing, *Transtexas Gas Corp. v. TransTexas Gas*, 303 F.3d 571, 579 (5th Cir. 2002) declares them to have been void. Furthermore, after the appeal of the *Supplemental Vesting Order* was dismissed, the *Supplemental Vesting Order* became final and no longer subject to any direct or collateral attacks by any court -- even the bankruptcy court itself.[16]

Further, if FSS Assets had been vested in the Jones Chapter 7 Estate, they were protected by Code §362(a) and under clear rulings from the Texas Supreme Court, if §362(a) was in effect when the Turnover/Receiver Orders were entered, they were void. *York v. State*, 373 S.W.3d 32, 39-40 (Tex. 2012).[17] In fact, under federal law, the stay is in effect even if assets are merely "arguably" in the Estate. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005). Furthermore,

---

[15] United States District Court Case No. 24-cv-03882 Dkt. No. 22

[16] The only potential exception to this finality was FRCP 60(b), motion, but no such motion was filed within a year of the *Supplemental Vesting Order*, so the order is final and non-appealable.

[17] In *York v. State*, 373 S.W.3d 32, 39-40 (Tex. 2012), the Texas Supreme Court declined to follow the Fifth Circuit's position that actions in violation of §362(a) are voidable not void.

even if all other arguments failed, there is no provision in the bankruptcy code that would allow a bankruptcy trustee or court to somehow "reconvey" assets to a dismissed former debtor whose assets had been vested elsewhere by §349.

### E. THE BANKRUPTCY COURT ISSUES A VOID ADVISORY OPINION

Even though the bankruptcy court had lost jurisdiction to affect the *Supplemental Vesting Order* when the appeal was dismissed, on September 26, 2025, Plaintiffs filed a motion with the bankruptcy court seeking an advisory opinion from the bankruptcy court that (a) the *Supplemental Vesting Order* had been declared null and void on February 5, 2025; (b) therefore FSS Assets were somehow deemed re-vested or reconveyed to FSS and were no longer the property of the Jones Chapter 7 Estate; and (c) therefore there was no automatic stay. [ROA.003507-4727].

In response to the Connecticut and Texas Plaintiffs requested advisory opinion the Bankruptcy Court held a hearing on October 1, 2025. [ROA.006751-6798]. While the Plaintiffs' own motion to the bankruptcy court conceded the FSS Assets *had been in fact transferred* to the Estate and had been subject to the automatic stay, in a bizarre and unanticipated twist, at the October 1 hearing, Judge Lopez announced that the automatic stay did not apply because the bankruptcy court had never vested by transfer of the FSS Assets to the Jones Chapter 7 Estate in the first place. [ROA.006757]. Then as a quasi-alternative argument, the bankruptcy court referenced the second sentence in the *Supplemental Vesting Order* that reads

18

[ROA.00285; 006757-006758]]:

> 2.    The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.

Judge Lopez then said that even if he did transfer them and they vested, this sentence meant that his conveyance of FSS Assets somehow disappeared after one year. This ignored the fact that Code §721 allows authorization of operations and has nothing to do with transfer or ownership of assets.

Following that hearing, on October 1, 2025 [App. E, ROA.006748-6749] Judge Lopez entered the *No-Vesting Order* stating the automatic stay did not apply to FSS Assets, expressly referring to the hearing transcript for the rationale for that incorrect advisory opinion. Notably, although the court said it had never transferred and vested title to the FSS Assets to the Jones Chapter 7 Estate, the bankruptcy court did not say explicitly whether the stay had never applied or was then-being lifted. The bankruptcy court did say that "deemed vested" is not equivalent to "vested," the later referencing title transferring, and the former apparently a meaningless act of the bankruptcy court.

This appeal ensued.

## VI.    STANDARD OF REVIEW

Questions of statutory interpretation and whether property constitutes "property of the estate" under 11 U.S.C. § 541 are reviewed de novo. *In re Mirant*

*Corp.*, 440 F.3d 238, 245 (5th Cir. 2006).

The scope and applicability of the automatic stay under § 362(a) is likewise reviewed de novo. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005).

A bankruptcy court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *In re First South Sav. Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987).

A court necessarily abuses its discretion when its decision rests upon a misinterpretation of governing statutes. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (persuasive authority on abuse principles); see also *Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024).

## VII.   ARGUMENTS

### A. THE BANKRUPTCY COURT INTENDED THAT THE JUNE VESTING ORDER WOULD CONVEY ALL FSS ASSETS TO THE JONES CHAPTER 7 ESTATE SO THEY COULD BE SOLD

To confuse a State court district judge, Plaintiffs told the Texas State court that instead of supplementing the *June Vesting Order*, the *Supplemental Vesting Order* somehow supplemented "the sale of FSS Assets" and "only existed for that purpose" Plaintiffs writing:

> Judge Lopez appeared to believe he was within his authority to find that supplemental order was nullified and no longer in effect since he had ruled that the sale which it had "supplemented" had been attempted and was unsuccessful, and the order only existed for that purpose. Any future sale would require its own supplemental order, which had become

[ROA.004567]. This was sheer nonsense. Rather the *Supplemental Vesting Order* was issued to remove any doubt that the *June Vesting Order* transferred FSS Assets to the Estate. [ROA.000285]. It did so for the express purpose of making clear that the *June Vesting Order* effected a transfer of all FSS Assets. The context in which the *Supplemental Vesting Order* was entered makes that clear and helps frame this District Court's understanding of the words used and thus may be considered by this Court in interpreting the orders.

The genesis of the Supplemental Vesting Order is that virtually immediately after the bankruptcy court issued its *June Vesting Order*, the Texas Plaintiffs came to a Texas State court seeking and obtaining a turnover of the FSS's Assets --- the very ones the *June Vesting Order* conveyed to the Jones Chapter 7 Estate. The BK Trustee as well as the Connecticut Plaintiffs vigorously protested. The BK Trustee removed the Texas Plaintiffs new turnover/receiver matter to the bankruptcy court and filed a motion (a) claiming that such actions violated the automatic stay and (b) asking for confirmation the stay applied to all FSS Assets. [ROA.000425-531]. This

led to a contentious hearing before Bankruptcy Judge Lopez who rebuked the Texas Plaintiffs for violating his *June Vesting Order*. [ROA.000532-740].

Following these events the BK Trustee determined that given his ownership of the FSS Assets, he wanted to hire an independent auctioneer and conduct an auction of FSS Assets. He therefore filed a motion for permission to do so [ROA.000784-840] which is required before any bankruptcy trustee can dispose of assets of a bankruptcy estate. While Plaintiffs supported this proposed sale, the Office of the United States Trustee objected (herein sometimes referred to as the UST to distinguish it from the BK Trustee). [ROA.000784-840].

The UST, a part of the Justice Department, is charged with overseeing the administration of bankruptcy cases, enforcing compliance with the Bankruptcy Code and procedures, and promoting the integrity and efficiency of the bankruptcy system.[18] The DOJ has described it as the "watchdog of the bankruptcy system" who appears from time to time in bankruptcy cases not to advance a private pocketbook interest, but to protect the system from fraud, dishonesty, overreaching, and abuse and to ensure the bankruptcy Code is followed. See 11 USCS §307.

As referenced, the UST filed an objection to the BK Trustee's request for authority to sell FSS Assets. The UST's objection to the BK Trustee's request for

---

[18] See U.S. Tr. Program, U.S. Dep't of Just., https://www.justice.gov/ust & program mission.

authority to sell FSS Assets was as significant as it was simple, asserting that the BK

Trustee could not sell what he did not own.  In the opinion of the UST, while the BK

Trustee for the Estate may own 100% of the FSS membership interest, this did not

translate into ownership of FSS Assets, the UST explaining:[19]

> "... [*the BK Trustee*] can step into the shoes of the 100% member and owner
> of FSS and exercise all rights given to such owner under state law and FSS's
> corporate governance documents such as working with employees and a
> manager on the winddown of the LLC, but it **cannot ask for Bankruptcy
> Court authority to sell assets it does not have property rights to**."
> [ROA.000784-840]

The UST went on to elaborate that the key issue was whether the FSS Assets were

actually property of the Estate under §541(a), writing:

> "Section 541(a) provides that "all legal or equitable interests of the debtor in
> property as of the commencement of the case" become property of the
> debtor's estate, but relevant federal and state law make clear that the legal and
> equity interest the Jones' estate holds in FSS is the 100% membership
> interests, rather than its assets " [*Id.* ROA.000852-853].

To address this objection, a hearing occurred on September 24, 2024.

[ROA.000851-852].  As that transcript gave birth to the *Supplemental Vesting*

*Order*, it plays a crucial role in the jurisdictional analysis this Court must perform

and must be consulted.  The notable speakers are (a) attorney Joshua Wolfshohl,

representing the BK Trustee, (b) the BK Trustee (Murray), and (c) attorney Ha Min

Nguyen, representing the United States Trustee.

---

[19] **In each of the following quotes, bold and underlined emphasis has been added as have
explanatory parentheticals to make clear who and what was being discussed and will not be
separately indicated**.

After introductory and explanatory comments from Wolfshohl, Murray, and the bankruptcy court, Mr. Wolfshohl, attorney for the BK Trustee explained why the BK Trustee had filed his motion for permission to sell FSS Assets:

> **MR. WOLFSHOHL**: I hope Your Honor appreciates that part of why we felt the need to come in here and get the order that we're asking for -- and I do think that there's reason under 363 to get this order **even though maybe the actual assets we're selling are not property of the Alex Jones estate, part of why we have felt the need to do this is because of** --[ROA.000896].

But when Wolfshohl said this, Judge Lopez interrupted, proclaiming FSS Assets were in fact part of the Estate. And when Wolfshohl said they "preferred" that interpretation, again Judge Lopez disagreed, saying it was the law:

> **THE COURT**: **It is property of the Alex Jones estate**, because Alex Jones owned the equity interest in FSS. 541, **all legal or equitable interests. All. And all has got to mean all**.

> **MR. WOLFSHOHL**: Okay. And I prefer that interpretation.

> **THE COURT**: No, no, it's not my interpretation. It's Congress. Congress used the word all. **All legal and equitable interests of the debtor become property of the estate. All means all. And we can't shortchange what all means**. And -- and upon conversion [*i.e. under §349*] unless otherwise ordered.... **And all has got to mean all. And we don't get to kind of pick and choose what all means.** I just -- I am just calling it like I see it.... I'm just a little confused about what we're doing here today. [ROA.000896-897].

Wolfshohl then explained that the turnover order the Texas Plaintiffs had sought after the *June Vesting Order* was a driving force requiring the bankruptcy court to be clear to which the court emphasized the *June Vesting Order* had already done that:

MR. WOLFSHOHL: Well, Your Honor, a turnover order is the reason we feel like we need the protection of your additional order. Yeah.

THE COURT: I know what you're asking. I understand what you're asking me for today. **But what I'm saying is it's already there. What you're asking for is belt and suspenders. Let's not act like it's not already there.....** I understand the concerns today and I understand the need to be clear. I understand what you're asking for. **But what you're asking me for really is belt and suspenders**. [ROA.000897-898].

Having engaged with the BK Trustee's counsel, the bankruptcy court then turned to the attorney for the United States Trustee, Mr. Nguyen who explained the UST's objection [ROA.000903].

```
13              But we filed this objection to the winddown motion
14     particularly because of our reading of the statute and our
15     understanding.  I know Your Honor says under 541 all means
16     all.  But there are basic tenets of American corporation
17     laws that the U.S. Supreme Court has said that -- you know,
18     just because you own a hundred percent of the equity, you
19     don't own a hundred -- the estate itself doesn't own the
20     assets.
```

To this, the court responded offering to amend the *June Vesting Order* to reflect what everyone, but the UST understood [ROA.000904]:

```
24              THE COURT:  Is it easier if I just amended my
25    order?  Because everybody knows that's what I intended to
1     do.  Would it just make it easier for you if I just amended
2     the order?
3              MR. NGUYEN:  That would be, Your Honor.  Under 349
4     if you bring those assets in.  But it's a little bit --
```

So emphatic was the bankruptcy court that Judge Lopez again interrupted to make it abundantly clear that the *June Vesting Order* had conveyed FSS Assets [[ROA.000904]:

> **THE COURT: <u>That was always the intent. Right?</u>** And we can disagree about that. **<u>But I'm just saying that was always the intent. Everybody knew</u>**. Everybody understood that at the time. If that wasn't clear or -- no one raised it to me then when winddown was being discussed. **<u>If you want me to do that, I am more than happy</u>** -- because it sounds like everybody needs it anyway -- **<u>I'm more than happy to clarify in my order that all the assets -- if it didn't include it in the assets, that's why he has the cash, right</u>**? That's why he's got the cash and that's why he's got the equity interest. He's got everything. **<u>That was always the intent as to what was going on</u>**. But if that makes this easy, I'm happy to do it. Because I think you and I actually agree a lot here. **<u>I just think we're getting in the technicalities here. But that certainly was what I ordered at the time</u>**.

The US Attorney reacted to the suggestion that alteration to the *June Vesting Order* was not in his mind, a "technicality" stating [ROA.000904]:

```
21              MR. NGUYEN:  Your Honor, it's not the
22    technicality.  It's actually what the Code says.
```

Attempting to obviate bickering the bankruptcy court again offered to supplement the *June Vesting Order* to make his intentions clear that in the *June Vesting Order* the court had always intended to bring FSS Assets in as Code §541 assets of the Estate by means of Code §349, the court stating [ROA.000905]:

> **THE COURT: ...**I'm just saying I'm happy to do it. And. no one is going to dispute it. I'm happy to do it. If that makes everybody's life happier, I'm happy to do it.

> **MR. NGUYEN:** It would make things easier, Your Honor. But it's a little bit unusual to dismiss a case but retain all of the assets with –

Code Section 349 reads:

> ## § 349. Effect of dismissal
>
> \*\*\*
>
> **((b)** Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]—
>
> > \*\*\*
> >
> > **(3)** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title

The only way FSS Assets could be deemed to have vested in the Estate is if the vesting determination was made at the time of the dismissal of FSS bankruptcy, i.e. June 2024.   And that fact explains the bankruptcy court's continual emphasis that he *intended* to accomplish the vesting in the *June Vesting Order*, i.e., ***at dismissal of the FSS bankruptcy***.   The court knew that unless it was done in the *June Vesting Order*, FSS Assets would have re-vested in FSS, and it would be

impossible for the bankruptcy court to later reach back out for them, whether in September 2024 or for that matter June 2025.    This reality explains why the bankruptcy court then quoted the language of Code §349 stating [ROA.000905]:

> **THE COURT**: **<u>Unless otherwise ordered by the Court</u>**. We don't have to get into what's unusual or not. Everything is case specific. That's why the -- I think that's why Congress gave everyone flexibility....
>
> **MR. NGUYEN:** Your Honor, I understand amending the order. And I think it would be very helpful in terms of actually clarifying what Mr. Murray has the actual --
>
> **THE COURT**: No, no, I understand that. And I think my statements were a little different. **<u>But I think clarifying on the record</u>** -- I don't think anybody is going to...

Then in his concluding remarks, counsel for the UST summarized the need for an order making it completely clear that in June, by virtue of the *June Vesting Order*, title to FSS Assets had been vested in the Estate as §541 assets under §349, stating [ROA.000906]:

```
12              MR. NGUYEN:  Your Honor, if you clarify the order
13    to include all of FSS hard assets as property of the estate,
14    the U.S. Trustee won't have any objection.  I think you are
15    able -- you have discretion under 349 to order otherwise.
16    As long as that order is clear, we're fine with that.
```

Turning again to Wolfshohl, counsel for the BK Trustee, the Court confirmed its intention was to give the BK Trustee all FSS Assets when it signed the *June Vesting*

*Order* and wanted a new order simply to "*clarify*" his intentions that the BK Trustee

had all FSS Assets under the *June Vesting Order* [ROA.000906-907]:

> **THE COURT**: Mr. Wolfshohl, what about that?... **I'm going to give you [*i.e., the BK Trustee whom Wolfshohl represents*] all the assets of FSS. I'm going to clarify that that's what you [*i.e. the BK Trustee*] always had, the assets of FSS. And I just want to make sure that other people look at it so that no one then -- I sign something and then somebody comes in and asks me to reamend the order**...[20]

> **MR. WOLFSHOHL:** ... you're talking about amending the dismissal order, [i*.e., the June Vesting Order*] to clarify that? That would help -- I think it would help.

And following this the court again makes clear that the order that will follow --the

Supplemental Vesting Order -- is not a *new* order but an order *clarifying* the *June*

*Vesting Order* [ROA.000907]:

> **THE COURT**: ... **And I feel like it's a clarifying order. It's not really amending the order** [i.*e. the June Vesting Order*]. Well, it's more -- I don't want to come up with bankruptcy terms for orders, but you know what I mean. It's more of a -- whether you can call it -- you can call it -- **I don't care what you call it. You can call it amended order or modified order, a clarifying order**.

> **MR. WOLFSHOHL**: An order in furtherance.

There can be no question from this background that the bankruptcy court intended

the *June Vesting Order* to actually convey FSS Assets to the BK Trustee pursuant to

Code §349 so that they became Code §541 assets of the Estate at that time, and the

---

[20] As will be addressed shortly, the October 2025 events were an attempt to come in after the fact and do precisely what the court said it did not want to happen.

Supplemental Vesting Order simply "clarified" what always intended when the *June Vesting Order* was entered.

The resulting Supplemental Vesting Order [ROA.000285] that followed makes clear it merely confirms the *June Vesting Order* and even makes it retroactive to the date the *June Vesting Order* was signed. It also confirms the court exercised its discretion to vest all FSS property Code §541 property of the Estate pursuant to Code §349(b), stating

> 1.   Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").

[ROA.00285]. These statutory references to both Code §349(b) and §541 will become important when later in October, Judge Lopez inexplicably denied either section was ever used.

The Fifth Circuit has given the term "vest" used in the *Supplemental Vesting Order* and in Code §349(b) its ordinary meaning of "ownership." *Viegelahn v. Lopez (In re Lopez)*, 897 F.3d 663, 669 (5th Cir. 2018) (holding "vest" means, in relevant part: to confer ownership of property on a person). *Id.*

In ordinary usage, "deemed" is not a hedging word; it is used to declare a legal status/effect. The *Supplemental Vesting Order* did not merely "deem" in the abstract—it directed the practical consequence that FSS Assets "shall be under the control of the trustee."

The second sentence of this order separately granted the Trustee permission to "operate the business" of FSS by adding [ROA.000285]:

> 2.    The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.

Section 721 reads as follows:

> ### § 721. Authorization to operate business
> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

This is not a re-vesting or claw-back statute; nothing in the text creates any mechanism for retroactively returning assets to FSS, particularly months later, and particularly when the Supplemental Vesting Order is final and non-appealable.

**B. THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(A) APPLIES TO THE FSS ASSETS BECAUSE THOSE ASSETS WERE VESTED IN THE JONES CHAPTER 7 ESTATE UNDER § 349(B) AND BECAME PROPERTY OF THE ESTATE UNDER § 541**

The Bankruptcy Court's October 1, 2025 Order rests on a single legal premise: that FSS Assets were never property of the Jones Chapter 7 estate and therefore were

never protected by the automatic stay. That premise is demonstrably false as a matter of law, statutory construction, finality doctrine, and the Bankruptcy Court's own record.

The Court's October 1 ruling contradicts:

1. The plain text of Code §349(b)(3);

2. The operative language of the *June Vesting Order*;

3. The operative language of the September 25, 2024 *Supplemental Vesting Order*;

4. The Court's own sworn transcript statements;

5. Fifth Circuit precedent defining "property of the estate";

6. Supreme Court precedent governing jurisdiction after appeal; and

7. The fundamental state law rule that actions taken in violation of Code §362(a) are void.

Reversal is required.

### 1. Once Vested Under Code §349(b), FSS Assets Became Property of the Estate Under §541 as a Matter of Law

Code Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The Fifth Circuit has repeatedly emphasized the breadth of §541: "Congress intended a broad range of property to be included in the estate." *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). Indeed, the statute's use of the word

32

"all" is expansive and comprehensive. The Bankruptcy Court itself acknowledged this during the September 24, 2024 hearing resulting in the *Supplemental Vesting Order*:

> "All means all. And we can't shortchange what all means."

[ROA.000897]. The operative event here is not § 541 alone, but § 349(b)(3). Section 349(b)(3) provides:

> "Unless the court, for cause, orders otherwise, dismissal revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case."

11 U.S.C. § 349(b)(3). Two propositions follow directly from the statute: (1) Upon dismissal, property automatically revests to the Debtor — *unless the court orders otherwise*; and (2) The court has express authority to alter revesting at the moment of dismissal. The Bankruptcy Court expressly exercised that authority.

The *June Vesting Order* simultaneously dismissed FSS's bankruptcy and transferred FSS's bank accounts and assets to the Chapter 7 Trustee of the Jones Chapter 7 Estate. That act constitutes an "order otherwise" under Code §349(b) as is set out in the Supplemental Vesting Order.

The Bankruptcy Court understood this statutory timing constraint. During the September hearing, the Court emphasized that vesting had to occur at dismissal:

> "Unless otherwise ordered by the Court… I think that's why Congress gave everyone flexibility."[21]

---

[21] ROA.00905.

And:

> "I'm going to give you all the assets of FSS… that's what you always
> had."[22]

Once vested in the estate under Code §349(b), the assets became §541 "property of

the estate" by operation of law and no further judicial action was required.  See *In*

*re Mirant Corp.*, 440 F.3d 238, 248 (5th Cir. 2006) ("Property becomes property of

the estate upon the filing of the petition and remains so unless abandoned or

otherwise removed from the estate."). There is no statutory mechanism allowing the

Bankruptcy Court to later "undo" that vesting outside FRCP or appellate review.

### 2.    Property of the Estate is Automatically Protected by §362(a)

Section 362(a)(3) automatically stays:

> … any act to obtain possession of property of the estate or to exercise
> control over property of the estate.

*See* 11 U.S.C. §362(a). The stay is automatic and not discretionary. It does not

require judicial confirmation.  It attaches the moment property qualifies as estate

property. The Fifth Circuit has held *that even arguable estate property triggers stay*

*protection*. *Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 303 (5th Cir. 2005).

Here, there was more than an arguable claim. There were written orders vesting the

property pursuant to Code §349. There was a clarifying order confirming vesting.

---

[22] ROA.000906.

There were transcript admissions by the Bankruptcy Court itself. There was confirming conduct by the bankruptcy court ordering the auction sale of the FSS Assets and all primary parties participated.[23] The automatic stay therefore attached as a matter of law and fact.

### 3.    Actions Taken in Violation of the Automatic Stay Are Void

The Supreme Court has long recognized the jurisdictional force of the automatic stay. See *Kalb v. Feuerstein*, 308 U.S. 433, 438–40 (1940).   In *York v. State*, 373 S.W.3d 32, 36 (Tex. 2012) "the Texas Supreme Court held that a judgment rendered in violation of the automatic stay is void, not merely voidable, and that a state court has jurisdiction to make that determination, even though the bankruptcy court might later disagree."[24]

If the FSS Assets were estate property, then the October 1st *No-Vesting Order* attempts to avoid this consequence by retroactively declaring the assets were never estate property.  That maneuver is legally impermissible.  A court cannot nullify prior vesting to avoid stay consequences.  Once vested, the assets must be disposed as the Code mandates (e.g., abandonment approved by the Court or lifting the

---

[23] Of importance, not a single party or participant to the highly contested bankruptcies of Jones and FSS ever suggested that after the *June Vesting Order* that no stay existed over the FSS Assets, except suggesting that the Bankruptcy Court voided the *Supplemental Vesting Order while on appeal to the District Court*, which of course the law prohibits.

[24]     The Fifth Circuit has held that actions taken in violation of § 362(a) are voidable. (*See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989); *Chesnut*, 422 F.3d at 302).

automatic stay for cause).  Neither exercise was taken in this case.  The bankruptcy court simply re-interpreted its year old order.

4.    **The Bankruptcy Court's October 1st** *No-Vesting Order* **is Not an "Interpretation" – It Is a Modification and Nullification of Final Orders**

Courts look to substance, not labels to determine if an interpretation or a modification arises. The Second Circuit's reasoning in *Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 141-42 (2d Cir. 2005) is instructive:

> Whether an order interprets or modifies an injunction is determined by its actual effect.  An interpretation does not change the status of the parties, while a modification alters the legal relationship between the parties, or substantially changes the terms and force of the injunction. We therefore consider the effect of each order and its relationship to the other.

The Fifth Circuit has adopted the same practical approach in *Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024):

> Interpretation, then, is not modification.   Taking a practical view of modification, we look beyond the terms used by the parties and the district court to the substance of the action.

Here, the October 1st *No-Vesting Order* does not clarify the June or September Vesting Orders.  It reverses them, and well after the fact. The earlier record is unequivocal. The Bankruptcy Court stated:

- Vesting - "That was always the intent." [ROA.00904].

- "He's got everything." [ROA.000904].

- "I'm going to clarify that that's what you always had, the assets of FSS." [ROA.000906].

The *Supplemental Vesting Order* confirmed vesting as property of the estate. And after appeal, the Court acknowledged it lacked jurisdiction to alter that Order: "I lose jurisdiction over that immediately." And, once the Texas Plaintiff's appeal was dismissed the *Supplemental Vesting Order* became final. The October 1st ruling, however, attempts to:

- Recharacterize vesting as conditional,

- Tie it to a failed auction,

- And belatedly declare no transfer ever occurred.

That is modification. It alters substantive rights. It changes ownership status. It affects stay protection.  It therefore exceeds interpretive authority.

**5.     The Bankruptcy Court Was Jurisdictionally Barred from Altering the Supplemental Vesting Order During the Texas Plaintiffs' Appeal**

When the Texas Plaintiffs appealed the Supplemental Vesting Order, the Bankruptcy Court lost jurisdiction over matters affecting that Order. As the United States Supreme Court has explained, the "filing of a notice appeal is an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982). Such an appeal confers exclusive jurisdiction on the appellate court while divesting the lower court "of its control over those aspects of the case involved in

the appeal." *Id*. The Bankruptcy Court acknowledged this rule when it stated that it "loses jurisdiction over that immediately."  Any statements made at the February 2025 hearing suggesting nullification were legally ineffective because a court cannot rescind or modify an order that is on appeal [and the bankruptcy court so stated on the record in the February 5, 2025 hearing].  After dismissal of the appeal, the *Supplemental Vesting Order* became final. A final order cannot be collaterally undone by later reinterpretation. *See, Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (holding that a final order is not subject to collateral attack).

### 6.    The October 1st *No-Vesting Order* Is, at Most, an Advisory Opinion

The October 1st Order did not:

- Vacate the *June Vesting Order*;

- Vacate the *Supplemental Vesting Order*;

- Grant relief under Fed. R. Civ. Proc 59(e), 60;

- Lift the automatic stay;

- Identify statutory authority for reversal.

Instead, it declared that the stay "does not apply" because no "transfer" occurred. If no transfer occurred, then the June and September Vesting Orders were meaningless and any effort at an auction of non-owned FSS Assets was meaningless. If a transfer occurred, the stay applies.  The October 1st *No-Vesting Order* attempts to stand in between. This is not legally sustainable. A federal court may not issue advisory

opinions. *Flast v. Cohen,* 392 U.S. 83, 96 (1968). The Order neither formally vacates nor properly modifies prior orders.  It simply contradicts them.

### 7.    Because the FSS Assets Were Estate Property, the Automatic Stay Remains in Effect

In conclusion:

- The *June Vesting Order* vested FSS Assets in the Jones Chapter 7 Estate under § 349(b).
- The *Supplemental Vesting Order* confirmed vesting.
- Vesting pursuant to § 349(b) rendered the assets § 541 property.
- § 362(a) automatically protected those assets.
- The October 1st *No-Vesting Order* cannot retroactively eliminate Jones Chapter 7 Estate property.

The Bankruptcy Court's legal conclusion that the stay does not apply is reversible error.

### C. THE BANKRUPTCY COURT ERRED IN HOLDING THAT ITS JUNE VESTING ORDER AND SEPTEMBER 25, 2024 SUPPLEMENTAL VESTING ORDER DID NOT TRANSFER AND VEST FSS ASSETS IN THE JONES CHAPTER 7 ESTATE

The October 1, 2025 ruling rests on an implicit conclusion: that neither the *June Vesting Order* nor the September 25, 2024, *Supplemental Vesting Order* actually transferred FSS Assets to the Jones Chapter 7 Estate. That conclusion is unsustainable for four independent reasons:

1. It contradicts the plain language of Code §349(b)(3).

2. It contradicts the text and transcript record of the Bankruptcy Court's own Orders.

3. It violates finality and law-of-the-case principles.

4.  It exceeds the Bankruptcy Court's jurisdiction.

Each ground independently requires reversal.

### 1.    Section 349(b)(3) Authorized Vesting at Dismissal – and Only at Dismissal

Section 349(b)(3) provides:

> "*Unless the court, for cause, orders otherwise*, dismissal revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3) (Emphasis Added).

The statute establishes a binary framework: If the court does nothing, property revests in the pre-petition owner, the Debtor. If the court "orders otherwise," revesting is altered at dismissal. The Bankruptcy Court plainly understood that vesting authority must be exercised at the moment of dismissal. During the September 24, 2024 hearing, the Court expressly referenced the statutory flexibility embedded in Code §349:

> Unless otherwise ordered by the Court. We don't have to get into what's unusual or not. Everything is case specific. I think that's why Congress gave everyone flexibility.

[ROA.000905]. This is a direct reference to § 349(b)(3). Thus, the *June Vesting Order* did precisely what the statute allows:  it dismissed FSS's case and transferred its assets to the Jones Chapter 7 Trustee. The September Vesting Order did not create a new transfer.  It clarified that the transfer had already occurred at dismissal. The Bankruptcy Court stated explicitly:

> But what I'm saying is it's already there. What you're asking for is belt
> and suspenders.

[ROA.000898]. And:

> That was always the intent. … He's got everything. That was always
> the intent as to what was going on.

[ROA.000904]. There is no ambiguity in those statements. Section 349(b)(3) was

invoked. The court ordered otherwise. Vesting occurred.

There is no statutory authority permitting "re-revesting" at a later date absent

FRCP 60 relief or appellate reversal. The Bankruptcy Code does not contain a

mechanism for automatic expiration of vesting upon a failed auction. Appellees'

theory—that vesting was implicitly conditional upon a successful auction—is

unsupported by statutory text, case law, or the record.

## 2.    The Supplemental Vesting Order Was a Clarification, Not a Conditional Sale Order

Appellees have argued that the *Supplemental Vesting Order* was tied

exclusively to the Trustee's ability to conduct an auction, and that when the auction

failed, the vesting failed.  The record squarely refutes that narrative. The Bankruptcy

Court described the *Supplemental Vesting Order* as a clarification of what had

already occurred under the *June Vesting Order*:

> I'm going to give you all the assets of FSS. I'm going to clarify that
> that's what you always had.

[ROA.000906]. And:

> It's more of a — I don't want to come up with bankruptcy terms for orders, but you know what I mean. It's more of a clarifying order.

[ROA.000907]. Nothing in the text of Code §349 or the *Supplemental Vesting Order* conditions vesting upon a completed auction. And nothing in the transcript suggests vesting would evaporate if sale efforts faltered. To the contrary, when asked in June 2025 about conducting another sale, the Court stated: "The question is do we do another sale? That's the real question." [ROA.003484]. That statement confirms the continued existence of vested estate property.  One does not contemplate conducting "another sale" of assets that have reverted.

Appellees' misplaced arguments require the Court to assume:

- Assets vested in June 2024;

- Vesting silently expired in December 2024;

- Assets automatically re-reverted to FSS;

- A new order would be required to re-vest them.

As the record correctly observes, this "abusive and absurd" construction finds no support in the Code.

### 3.    The Supplemental Vesting Order Became Final and Cannot Be Collaterally Undone

The Texas Plaintiffs appealed the Supplemental Vesting Order. Under *Griggs*, the appeal divested the Bankruptcy Court of jurisdiction to alter that Order:

> The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district

court of its control over those aspects of the case involved in the appeal.

*Griggs,* 459 U.S. at 58. In the February 5 Transcript the Bankruptcy Court

acknowledged this jurisdictional limitation:

> THE COURT…I should back up and mention that the (Supplemental Vesting) Order was appealed by the Texas families. I think that matter is still pending.

> MR. JORDAN: It is, Judge.

> THE COURT: I lose jurisdiction over that immediately.

[ROA.003323]. Texas Plaintiffs Objection to Motion for Reconsideration and

Clarification, at pg. 6 "The appeal was dismissed on May 6, 2025. Dkt #49 "Plaintiffs

and the Trustee voluntarily stipulated to dismiss the appeal of Supplemental

Dismissal Order pursuant to FRBP 8023, and on May 16, 2025, the District Court

terminated the appeal. note 27: In re Free Speech Systems, LLC, Case No. 4:24-

CV-03882 (S.D. Tex. May 6, 2025) [Docket No. 22]." Upon dismissal, the

September 2024 *Supplemental Vesting Order* became a final unappealable judgment

that cannot be collaterally attacked or challenged. Final orders are not subject to

collateral attack. *Travelers Indem. Co*., 557 U.S. at 152 (Final bankruptcy orders *i.e*.,

orders that are affirmed upon direct review, or, as in this case, not appealed or

contested) become "res judicata to the parties and those in privity with them, not

only as to every matter which was offered and received to sustain or defeat the claim

or demand, but as to any other admissible matter which might have been offered for

that purpose." Id.  Nor may a bankruptcy court later interpret a final order in a way that alters substantive rights. The Fifth Circuit has repeatedly held that final bankruptcy orders are binding and enforceable unless reversed on direct appeal. I*n re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993).

The October 1st *No-Vesting Order* attempts precisely what the Supreme Court forbids: to "effectively nullify" a final order without FRCP 60 authority. That exceeds jurisdiction.

### 4.    The October 1st Ruling Contradicts the Bankruptcy Court's Prior Orders

The Bankruptcy Court had already determined:

- That vesting occurred;

- That the Trustee possessed FSS Assets;

- That § 541 property existed;

- That an auction sale was appropriate.

The *Supplemental Vesting Order* memorialized those determinations. The October 1st *No-Vesting Order* contradicts them. The Fifth Circuit has cautioned that a court abuses its discretion when it departs from its own prior rulings without justification. No new evidence emerged. No statutory amendment occurred. No appellate reversal intervened. The only change was a shift in judicial interpretation.  That is insufficient to overcome finality.

### D. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN REFUSING TO

### REQUIRE THE TRUSTEE TO CONDUCT A LIVE AUCTION OF FSS ASSETS

Even if the Court were to disregard the stay issue, reversal is independently warranted because the Bankruptcy Court abused its discretion in refusing to require a live auction of FSS Assets after previously recognizing those assets had vested in the estate and were subject to sale.

### 1.  A Chapter 7 Trustee is A Fiduciary for The Benefit of Creditors

A Chapter 7 trustee is a fiduciary for the benefit of creditors. *In re Jolly Props.*, No. 09-30872-H4-7, 2009 Bankr. LEXIS 2162 (Bankr. S.D. Tex. Aug. 11, 2009). The Trustee must maximize value and ensure fairness in the disposition of estate assets. See *Gluckstadt Holdings*, *L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 326-27 (5th Cir. 2019); *Cadle Co. v. Mims (In re* Moore), 608 F.3d 253, 263 (5th Cir. 2010) ("A trustee has a duty to maximize the value of the estate [and] must demonstrate that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal."). Competitive bidding is the preferred mechanism for maximizing estate value. The Bankruptcy Court initially recognized this principle, rejecting the failed settlement and expressing frustration that no genuine sale occurred:

The question is do we do another sale? That's the real question.

[ROA.003484].  At the February hearing, the Court rejected a proposed "settlement" precisely because it circumvented a fair sale process. The Court's anger at manipulation of the process is evidence in the transcript. Yet despite recognizing the need for a legitimate sale, the Court ultimately declined to require one. That result conflicts with:

- The Trustee's fiduciary duty;

- The Court's own prior rulings;

- The purpose of vesting under § 349(b);

- The need to protect estate value.

### 2.  The Refusal to Enforce an Auction Was Arbitrary

An abuse of discretion occurs when a court's decision abuse of discretion occurs when a court's decision rests on an erroneous legal premise or clearly erroneous factual conclusion, legal premise or clearly erroneous factual conclusion.  *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).

If the FSS Assets were estate property, the Trustee had authority and duty to sell them. The auction was the recognized method. This was confirmed by the Bankruptcy Court's prior sale procedures. If the FSS Assets were not estate property, the Trustee had no authority whatsoever and all sale efforts were ultra vires. Under either scenario, refusing to clarify and enforce a lawful auction constitutes reversible error.

This is because the Bankruptcy Court cannot simultaneously vest assets for sale, reject flawed sale attempts, recognize the need for another sale, and then decline to require one. That inconsistency itself constitutes abuse of discretion.

### 3. The Court's Refusal Undermines the Purpose of § 349(b) Vesting

The purpose of vesting FSS Assets in the Jones estate was clear: to allow a centralized Chapter 7 liquidation. The transcript reflects that the Court intended the Trustee to control and sell all FSS Assets. If vesting was for sale, then sale was the necessary next step. If vesting was not for sale, then the vesting orders lacked rational basis. The Bankruptcy Court's refusal to enforce a live auction left estate property in limbo, prejudicing creditors and undermining orderly administration. That is reversible.

### E. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING APPELLANTS' MOTION FOR RECONSIDERATION UNDER BANKRUPTCY RULE 7054(B) INCORPORATING FEDERAL RULE OF CIVIL PROCEDURE 54(B)

Even assuming arguendo that the October 1, 2025 Order were interlocutory, the Bankruptcy Court abused its discretion in refusing to reconsider that ruling under Bankruptcy Rule 7054(b), which incorporates Federal Rule of Civil Procedure 54(b).

### 1. Legal Standard Governing Reconsideration of Interlocutory Orders

Bankruptcy Rule 7054(b) provides that, in adversary proceedings, Rule 54(b) governs revision of interlocutory orders. Federal Rule of Civil Procedure 54(b) states:

> Any order or other decision… that adjudicates fewer than all the claims… may be revised at any time before the entry of a judgment adjudicating all the claims.

Unlike Rule 59(e) or Rule 60(b), Rule 54(b) affords broader authority to correct legal error prior to final judgment.

The Fifth Circuit has explained that under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex.*, *L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *Lavespere v. Niagara Mach. & Tool Works*, *Inc.*, 910 F.2d 167, 185 (5th Cir. 1990). Where a ruling rests on a misinterpretation of governing statutes, reconsideration is not merely permissible – it is required to prevent manifest injustice.

### 2.  The October 1st Order Rests on Clear Legal Error

As established above, the October 1 Order rests on the erroneous premise that FSS Assets were never vested in the estate. That conclusion contradicts (1) the plain language of § 349(b); (2) the text of the June and September Vesting Orders; (3) the Court's own sworn statements; (4) the finality of the Supplemental Vesting Order; (5) Fifth Circuit precedent governing estate property; and (6) Supreme Court precedent governing jurisdiction after appeal.  A finding is clearly erroneous only if "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed."  *In re First South Savings*

*Assn*, 820 F.2d 700,711 (5th Cir. 1987). A court abuses its discretion when its ruling is based on an erroneous legal premise.  Id., *First South Sav. Ass'n*; *Bunch v. Hoffinger Indus. Inc.*, 292 B.R. 639, 642 (B.A.P. 8th Cir. 2003) ("An abuse of discretion may only be found if the lower court's judgment was based upon clearly erroneous factual findings or erroneous legal conclusions."). The Bankruptcy Court's refusal to reconsider perpetuated that error.

### 3.    Failure to Reconsider Produces Manifest Injustice

If the *No Vesting Order* stands:

- Estate property is stripped of § 362 protection retroactively and a free-for-all seizing assets has been authorized.

- State court turnover proceedings affecting estate assets are validated.

- Final bankruptcy orders are destabilized.

- Creditors are deprived of centralized Chapter 7 administration.

- Trustee authority is rendered incoherent.

Conversely, if the October 1 Order is reversed:

- Estate property remains protected.

- Any actions taken in violation of the stay are voided.

- Administration of the bankruptcy case returns to statutory footing.

- Final orders retain binding force.

Courts may also grant reconsideration when "necessary to prevent manifest

injustice." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998).  The Fifth Circuit has emphasized that Rule 54(b) reconsideration should prevent injustice caused by legal error. *Austin*, 864 F.3d 326, 336 (5th Cir. 2017). Here, reconsideration was the only vehicle to correct a ruling that contradicted final orders and statutory command.

### 4.  The October 1st Order Cannot Function as a Retroactive Stay-Lifting Order

Appellees have suggested that the October 1st *No Vesting Order* and ruling effectively lifted the stay. The record refutes that characterization. This is because:

- No motion to lift the stay under Code §362(d) was filed.

- No evidentiary hearing under Code §362(d) occurred.

- The Order does not cite Code §362(d).

- The Court did not grant relief from stay.

Instead, the Court declared the stay never existed. That is not stay relief.  It is a retroactive reclassification of estate property after literally millions were spent in reliance on the vesting of the FSS Assets as property of the estate.  The Bankruptcy Code provides a mechanism to lift the stay. However, it does not provide a mechanism to declare retroactively that estate property never existed where the order provided that it did. The Fifth Circuit has cautioned that courts may not use procedural shortcuts to evade statutory requirements.  If it was stay-relief that was sought, Appellees were required to file a motion under Code §362(d) and meet those

burdens. They did not.  The October 1st *No-Vesting Order* cannot be repurposed into relief that was never sought, and granting relief that parties were never apprised of.

### 5.  To The Extent the October 1st *No-Vesting Order* Attempts to Modify the *Supplemental Vesting Order*, It Is Void

If the October 1 *No-Vesting Order* is construed as modifying the June *Vesting Order* or the September 2024 *Supplemental Vesting Order*, it exceeds jurisdiction of the Bankruptcy Court to do so. This is because the *Supplemental Vesting Order* was appealed which divested the Bankruptcy Court with jurisdiction pending appeal. Then, upon dismissal of the appeal, the Order became final. Final orders cannot be collaterally undone absent timely Rule 60(b) motions.  None were timely filed, and none heard on October 1, 2025. Thus, the Bankruptcy Court could not set aside its own final order and lacked authority to interpret the final order in a manner that alters substantive rights.

The effect of the October 1st *No-Vesting Order* is to nullify the actual prior vesting.  That exceeds interpretive authority.

## CONCLUSION AND PRAYER

The Bankruptcy Court:

1. Exercised its authority under 11 U.S.C. Code §349(b)(3) to vest all FSS Assets in the Chapter 7 estate of Alexander E. Jones.

2. Confirmed that vesting through the September 25, 2024 Supplemental Vesting Order.

3. Acknowledged repeatedly that such vesting was "always the intent."

4. Lost jurisdiction to alter that Order during appeal.

5. Allowed that Order to become final.

6. Permitted the Trustee to administer those assets as estate property.

7. Then, on October 1, 2025, declared that no transfer ever occurred and that the automatic stay does not apply.

That ruling:

- Contradicts the Bankruptcy Code;

- Contradicts binding Supreme Court and Fifth Circuit precedent;

- Contradicts final orders;

- Contradicts the Court's own record;

- And produces jurisdictional instability incompatible with federal bankruptcy administration.

The October 1, 2025 Order should be REVERSED.

This Court should hold:

1. That FSS Assets were vested in the Jones Chapter 7 estate under § 349(b).

2. That those assets constitute property of the estate under § 541.

3. That the automatic stay under § 362(a) applies to those assets.

4. That actions taken in violation of the stay are voided.

5. That the Bankruptcy Court abused its discretion in denying reconsideration.

6. That the Trustee must administer the FSS Assets consistent with prior vesting orders, including through a lawful and competitive auction process.

**WHEREFORE, PREMISES CONSIDERED**, Appellants respectfully requests that this Court enter an order, reversing the Bankruptcy Court's October 1, 2025 Order, and for such other and further relief to which Appellants may be justly entitled, both at law and in equity.

Dated:  February 25, 2026

Respectfully submitted,

*/s/ Shelby A. Jordan*
Shelby A. Jordan
Texas Bar No. 11016700
Antonio Ortiz
Texas Bar No. 24074839
**JORDAN & ORTIZ, PC.**
500 N. Shoreline Blvd., Suite 804
Corpus Christi, Texas, 78401
Phone: (361) 884-5678
Fax:  (361) 888-5555
Email:      sjordan@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**ATTORNEYS FOR APPELLANTS**

Ben C Broocks
State Bar No. 03058800
William A. Broocks
State Bar No. 24107577

BROOCKS LAW FIRM P.L.L.C.
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR APPELLANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2026, a true and correct copy of the foregoing document was sent via electronic mail to all counsel and parties listed on the Court's ECF filing system.

*/s/ Shelby A. Jordan*
Shelby A. Jordan

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Bank. R. 8015(a)(7)(B)(i) because it contains 11,229 words, excluding the parts of the brief exempted by Bank. R. 8015(g).

2. This brief complies with the typeface requirements of Bank R. 8015(a)(5) and the typestyle requirements of Bank R. 8015(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, size 14.


*/s/ Shelby A. Jordan*
Shelby A. Jordan