# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br>    **Alexander E. Jones**<br>    **Debtor** | §<br>§<br>§<br>§ | **Bankruptcy Case No. 22-33553** |
| **ALEXANDER E. JONES AND**<br>**FREE SPEECH SYSTEMS, LLC**<br>*Appellants.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:25-cv-05553** |

On Appeal from the United States Bankruptcy Court
for the Southern District of Texas, Houston Division
Cause No. 25-05553

## APPELLEES' BRIEF

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Fax: (713) 510-1799
E-mail: jhardy2@willkie.com

**CAIN & SKARNULIS PLLC**
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (*pro hac vice* forthcoming)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**WILLKIE FARR & GALLAGHER LLP**
Stuart R. Lombardi (admitted *pro hac vice*)
Allison A. Berkowitch (*pro hac vice* forthcoming)
Deanna Drenga (*pro hac vice* forthcoming)
787 Seventh Avenue New York, NY 10019 Telephone: (212) 728-8000
Fax: (212) 728-8111
E-mail: slombardi@willkie.com
ddrenga@willkie.com
aberkowitch@willkie.com

**LAWSON & MOSHENBERG PLLC**
Avi Moshenberg
State Bar No. 24083532
801 Travis Street, Suite 2101, #838
Houston, TX 77002
Telephone: (713) 449-9644
E-mail:
avi.moshenberg@lmbusinesslaw.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin
State Bar No. 24070221
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0388
Fax: (713) 576-0301
E-mail: jbmartin@bradley.com

*Co-Counsel to the Texas Families*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kyle J. Kimpler (*pro hac vice* forthcoming)
Paul Paterson (*pro hac vice* forthcoming)
Daniel S. Sinnreich (*pro hac vice* forthcoming)
Vida J. Robinson (*pro hac vice* forthcoming)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
ppaterson@paulweiss.com
dsinnreich@paulweiss.com
virobinson@paulweiss.com

*Co-Counsel to the Connecticut Families*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................1

FACTUAL BACKGROUND ..........................................................................3

    A.  Jones And FSS Defames The Sandy Hook Families..............................3

    B.  Jones And FSS Declare Bankruptcy..........................................................5

    C.  The Texas Families Pursue State Court Remedies.................................6

    D.  The Chapter 7 Trustee Auctions The Assets Of FSS. ............................6

    E.  The Bankruptcy Court Declares The Supplemental Dismissal Order Is Null And Void. .....................................................................................8

    F.  FUAC Tries To Keep Its Bid Alive...........................................................10

    G.  The Sandy Hook Families Pursue State Court Remedies. .....................11

    H.  The Sandy Hook Families Seek Clarification From The Bankruptcy Court. ........................................................................................................13

    I.  The Bankruptcy Court Orders That The FSS Cash Be Transferred To The State Court Receiver. ....................................................................15

ARGUMENT ................................................................................................15

    I.  JONES'S APPEAL IS UNTIMELY...........................................................15

    II.  JONES DOES NOT HAVE STANDING TO APPEAL ..........................21

    III.  IS IT BLACK LETTER LAW THAT THE FSS ASSETS ARE NOT PROPERTY OF THE JONES ESTATE .................................................23

    IV.  The Bankruptcy Court's Orders Did Not Render the FSS Assets Property of the Jones Estate ..............................................................................25

      A.  The FSS Assets Did Not Become Jones Estate Property Under The Dismissal Order. ...............................................................................26

      B.  The FSS Assets Did Not Become Jones Estate Property Under The Supplemental Dismissal Order. ..........................................................27

    V.  The Court Did Not Abuse Its Discretion by Not Requiring the Trustee to Conduct a Subsequent Sale of FSS Assets..................................30

CONCLUSION .............................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AKD Invs.*,
　79 F.4th 487 (5th Cir. 2023) ...............................................................29

*In re Bressler*,
　No. 20-31024, 2021 WL 126184 (Bankr. S.D. Tex. Jan. 13, 2021) ..................28

*In re Cleveland Imaging & Surgical Hosp., L.L.C.*,
　26 F.4th 285 (5th Cir. 2022) ...............................................................19

*In re Cyrus II P'ship*,
　358 B.R. 311 (Bankr. S.D. Tex. 2007) (Isgur, J.)..............................................21

*Czyzewski v. Jevic Holding Corp.*,
　580 U.S. 451 (2017)...............................................................26

*In re Durand-Day*,
　134 F.4th 846 (5th Cir. 2025) ...............................................................29

*Durham v. Accardi*,
　587 S.W.3d 179 (Tex. Ct. App. 2019)...............................................................24

*In re Ghatanfard*,
　666 B.R. 14 (S.D.N.Y. 2024) ...............................................................22

*In re Gonic Realty Trust*,
　909 F.2d 624 (1st Cir. 1990)...............................................................26

*In re Guyana Dev. Corp.*,
　168 B.R. 892 (Bankr. S.D. Tex. 1994) ...............................................................23

*Hicks v. Texas*,
　419 S.W.3d 555 (Tex. Ct. App. 2013)...............................................................24

*In re Hot'z Power Wash, Inc.*,
　655 B.R. 107 (Bankr. S.D. Tex. 2023) ...............................................................28

*Jackson v. Bank of Am., N.A.*,
   No. 3:13CV581-LG-JCG, 2014 WL 5511017 (S.D. Miss. Oct. 31,
   2014) ...................................................................................................20

*Jones v. Lafferty*,
   No. 25-268, 607 U.S. __ (2025) ...................................................5, 22

*In re Lopez*,
   897 F.3d 663 (5th Cir. 2018) ...............................................................29

*In re Mandel*,
   Adv. No. 10-40219, 2017 WL 1207503 (Bankr. E.D. Tex. Mar. 31,
   2017), *aff'd*, No. 4:17-CV-262, 2019 WL 6930339 (E.D. Tex. Dec.
   19, 2019), *aff'd*, No. 20-40026, 2021 WL 3642331 (5th Cir. Aug.
   17, 2021) ..............................................................................................24

*In re Maples*,
   529 F.3d 670 (5th Cir. 2008) ...............................................................24

*In re Murchison*,
   54 B.R. 721 (Bankr. N.D. Tex. 1985)...................................................25

*In re Okorie*,
   No. 24-60255, 2024 WL 4471734 (5th Cir. Oct. 11, 2024).........21, 23

*Penhollow Custom Homes, LLC v. Kim*,
   320 S.W.3d 366 (Tex. Ct. App. 2010)...................................................25

*In re Solomon*,
   Nos. 96-11201, 96-11528, 96-11529, 1997 WL 680934 (5th Cir.
   Sept. 25, 1997) .....................................................................................21

*Wiese v. Cmty. Bank of Cent. Wis.*,
   552 F.3d 584 (7th Cir. 2009) ...............................................................26

**Statutes**

11 U.S.C. § 349(b)(3).................................................................................26

**Other Authorities**

*Deem, Black's Law Dictionary* (12th ed. 2024) .......................................28

iii

Fed. R. Bankr. P. 8002(a)(1)...................................................................................19

Fed. R. Bankr. P. 8003(a)(3)(B) .............................................................................19

## PRELIMINARY STATEMENT[1]

This appeal arises out of the long-running efforts of the families of victims of the Sandy Hook Elementary School shooting to collect on defamation judgments they obtained against Alex Jones and his company Free Speech Systems, LLC ("FSS"), the entity that operated Jones's Infowars media platform. Jones owns FSS, and both Jones and FSS separately filed for bankruptcy protection. FSS's bankruptcy case was dismissed in 2024, meaning that FSS was no longer protected by the Bankruptcy Code's automatic stay and that the Sandy Hook Families could enforce their judgments against FSS and its assets in state court.

Jones now attempts to block those collection efforts. After Jones supported dismissing FSS's bankruptcy case, Jones claims that FSSs' assets are property of his own personal Chapter 7 bankruptcy estate (the "Jones Estate") and therefore shielded by the automatic stay in his individual bankruptcy case. But it is blackletter law that the assets of a bankrupt debtor's wholly owned subsidiary are not property of the parent shareholder's bankruptcy estate and therefore not protected by the automatic stay. Rather than argue otherwise, Jones mischaracterizes prior orders of the Bankruptcy Court, contending that those orders vested FSS's assets in the Jones Estate. The Bankruptcy Court did no such thing. Using the broad discretion granted to it under section 349(b) of the Bankruptcy Code, the Bankruptcy Court "deemed"

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the remainder of this brief.

FSS's assets to be property of the Jones Estate for the limited purpose of facilitating a sale process that the chapter 7 trustee in the Jones's bankruptcy case (the "Chapter 7 Trustee") sought to pursue. That sale process was never consummated. After it was terminated, the Bankruptcy Court repeatedly ordered that the "deemed" vesting was "null and void," that FSS's assets were not actually property of the Jones Estate, and that the Sandy Hook Families could pursue collection against FSS in state court.

Rather than promptly appeal those orders—which the Bankruptcy Court issued several times—Jones waited nine months to file this appeal. During that time, and despite claiming that the FSS's assets were part of the Jones Estate, Jones filed appeals purportedly on behalf of FSS in many courts, all without any consultation with the Chapter 7 Trustee, whom Jones now argues controlled those very assets. FSS's assets are not assets of the Jones Estate. They are assets belonging to FSS, which is now controlled by a receiver appointed by the Texas District Court. Jones's repeated, transparent efforts to block the sale of those assets must come to an end. The Bankruptcy Court's orders confirming that FSS's assets are not part of the Jones Estate should be affirmed.

The Bankruptcy Court also did not abuse its discretion by declining to require the Chapter 7 Trustee to conduct a sale of FSS's assets. Jones cites no legal authority for the proposition that a court may order a chapter 7 trustee to force an asset sale,

2

and there is none.  Reversible error is especially lacking here, where the assets at issue are not property of the chapter 7 estate.

Jones's appeal is both untimely and meritless, and should not be permitted to further delay the Sandy Hook Families from collecting on their judgments against FSS.

## **FACTUAL BACKGROUND**

This appeal is the latest in a prolonged series of attempts to delay the Connecticut Families[2] and the Texas Families'[3] (together, the "Sandy Hook Families") efforts to collect on their judgments against Alex Jones and FSS.  Since Jones and FSS filed bankruptcy in 2022, the Sandy Hook Families have yet to collect one dollar from them.  As the record[4] makes clear, this attempt, like all the preceding ones, lacks merit because the Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has repeatedly held that the assets of FSS ("FSS Assets") are not part of the Jones Estate and therefore not subject to the automatic stay.

**A. Jones And FSS Defames The Sandy Hook Families.**

The Sandy Hook Families obtained separate judgments against Jones and FSS, after Jones and FSS broadcast malicious lies about the Sandy Hook Families

---

[2] The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.
[3] The "Texas Families" are Neil Heslin, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.  Marcel Fontaine was not connected to the Sandy Hook shooting but separately sued FSS for its role in spreading lies about him in relation to the Parkland school shooting in Florida in 2018.
[4] Record citations in this brief will be made in the following format: ROA.XXXX.

in the wake of the December 2012 shooting at Sandy Hook Elementary School. *See, e.g.*, ROA.005611–12; ROA.005867–86; ROA.005965–67.  As the Sandy Hook Families suffered an unimaginable loss, Jones and FSS aired a number of segments which accused them of being crisis actors, claimed that the shooting was a hoax, and asserted that their children did not actually die. *Id.*  Jones and FSS did all this to line their own pockets through the sales of supplements to the millions of people who viewed these segments on InfoWars.  ROA.005657–58.  As more and more people believed Jones's lies about the shooting, the Sandy Hook Families received death threats, suffered from acute emotional distress, and feared for their safety. ROA.005608; ROA.005876.

The Sandy Hook Families sought recourse in the courts to hold Jones and FSS to account for their lies.  In 2018, the Sandy Hook Families pursued three separate lawsuits against Jones and FSS in Texas and Connecticut state courts for defamation and intentional infliction of emotional distress.[5]  ROA.003126; ROA.005678.  In 2022, a Connecticut state court awarded the Connecticut Families over $1 billion in damages (the "Connecticut Judgment").  ROA.005680.  In 2023, a Texas state court awarded Neil Heslin and Scarlett Lewis nearly $50 million in damages in their suit

---

[5] *Pozner and De La Rosa v. Jones, et al.*, Case No. D-1-GN-18-001842, in the 345th Judicial District Court of Travis County, Texas; *Heslin v. Jones, et al.*, Case No. D-1-GN-18-001835, in the 261st Judicial District Court of Travis County, Texas;  *Lewis v. Jones, et al.*, Case No. D-1-GN-18-006623, in the 98th Judicial District of Travis County, Texas; and Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. CV-18-6046436-S.

against Jones and FSS. ROA.005965–67. In October 2025, after the Connecticut Judgment was affirmed in Connecticut appellate courts, the Supreme Court of the United States denied Jones's request for review of the Connecticut Judgment making it a final judgment against Jones and FSS.[6]

## B. Jones And FSS Declare Bankruptcy.

On July 29, 2022, while the lawsuits brought by the Sandy Hook Families were still ongoing, FSS filed a Subchapter V bankruptcy petition in the Bankruptcy Court.[7] ROA.000001. That same year, Jones separately filed an individual Chapter 11 bankruptcy petition in the Bankruptcy Court.[8] ROA.005681.

On June 14, 2024, after nearly two years in bankruptcy proceedings, Jones's bankruptcy was converted to a case under Chapter 7 of the Bankruptcy Code and Christopher R. Murray was appointed as the Chapter 7 Trustee. ROA.000421–24; ROA.000447. While both Jones and the Sandy Hook Families agreed that the Jones Bankruptcy Case should be converted to a Chapter 7 case, the parties disagreed on whether the FSS Bankruptcy Case should be dismissed or converted to Chapter 7 case. Jones argued that the FSS Bankruptcy Case should be dismissed. On June 21, 2024, the Bankruptcy Court entered an order dismissing the FSS Bankruptcy Case (the "Dismissal Order"). App. A, ROA.000156. Under the Dismissal Order,

---

[6] *See Jones v. Lafferty*, No. 25-268, 607 U.S. __ (2025) (Certiorari Denied Order List).
[7] Case No. 22-60043 (the "FSS Bankruptcy Case").
[8] Case No. 22-33553 (the "Jones Bankruptcy Case").

the Bankruptcy Court authorized, among other things, FSS's chief restructuring officer to transfer control and signing authority over FSS's bank accounts to the Chapter 7 Trustee, so that Jones would not be able to loot the funds in FSS's accounts at the expense of the Sandy Hook Families. *Id.*

## C. The Texas Families Pursue State Court Remedies.

After the FSS Bankruptcy Case was dismissed, the Texas Families pursued state court remedies against FSS as it was not protected by the automatic stay. ROA.000435–37.  More specifically, the Texas Families sought and obtained an order from Texas state court directing the turnover of the FSS Assets to enforce Heslin and Lewis's judgment against the company (the "Turnover Order").  *Id*.; ROA.000482.

## D. The Chapter 7 Trustee Auctions The Assets Of FSS.

The Chapter 7 Trustee sought relief from the Bankruptcy Court with respect to the Turnover Order, as the Chapter 7 Trustee was intending to pursue a combined sale of certain Jones and FSS assets under section 363 of the Bankruptcy Code. ROA.000425–d33; ROA.000784.  The Bankruptcy Court directed the Chapter 7 Trustee not to turn over the FSS Assets to Heslin and Lewis. ROA.000773–74.  The United States Trustee objected to the Chapter 7 Trustee's request to sell the FSS Assets because such assets were not part of the Jones Estate under black letter bankruptcy law. ROA.000903–05.

To facilitate the sale of the FSS Assets while addressing the concerns of the United States Trustee, on September 25, 2024, the Bankruptcy Court entered a supplemental dismissal order which stated that "all property of the estate of [FSS] shall be deemed to have vested in the bankruptcy estate of [Jones] as property of that estate pursuant to Section 541 and shall be under the control of the" Chapter 7 Trustee (the "Supplemental Dismissal Order").[9] ROA.006892. The express purpose of the Supplemental Dismissal Order was to facilitate the sale of the FSS Assets. *See* ROA.000904–06 ("I'm just authorizing a sale . . . I'm going to clarify that that's what [the Chapter 7 Trustee] always had, the assets of FSS."); *see also* ROA.003329 ([T]the purpose for which [the Supplemental Dismissal Order] served was the auction of the [FSS] assets").

Upon entry of the Supplemental Dismissal Order, the Chapter 7 Trustee proceeded to market the FSS Assets. On September 27, 2024, the Chapter 7 Trustee filed a *Notice of Auction*. ROA.0000912–14. The Chapter 7 Trustee commenced and conducted an auction process in which a successful bidder for the FSS Assets was selected. After filing a notice of a successful bidder for such assets, the Chapter 7 Trustee filed an *Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* (the "Motion to Sell") which was supported

---

[9] The Texas Families appealed the Supplemental Dismissal Order. (Case No. 4:24-cv-03882). On May 6, 2025, the parties to the appeal filed a stipulation of voluntary dismissal pursuant to Rule 8032(a) of the FRBP and the appeal was dismissed. ROA.004354–57.

by Global Tetrahedron, LLC (also known as "The Onion").    ROA.1024–26; ROA.001125–36.

The auction process conducted by the Chapter 7 Trustee resulted in two competing bids. ROA.001024–26. One was submitted by Global Tetrahedron, LLC in conjunction with the Connecticut Families. *Id.* The other was submitted by First United American Companies ("FUAC"), a company affiliated with Alex Jones and FSS. *Id.* The Chapter 7 Trustee chose Global Tetrahedron's bid as the successful bid and asked the Bankruptcy Court to approve the sale. *Id.* Jones and FUAC contested the bid and raised concerns about the auction process. ROA.001028-001037. After receiving briefing on the issue and holding a two-day hearing about the auction process, the Bankruptcy Court ultimately denied the Motion to Sell, citing concerns about the auction process. ROA.002485; ROA.002838–62.

**E. The Bankruptcy Court Declares The Supplemental Dismissal Order Is Null And Void.**

After denying the Motion to Sell, the Bankruptcy Court repeatedly made clear that the FSS Assets are not property of the Jones Estate, are not protected by the automatic stay, and that the Sandy Hook Families can pursue remedies in state court.

On February 5, 2025, the Bankruptcy Court held a hearing in which it made clear that the Supplemental Dismissal Order was "null and void" and that the FSS Assets were not property of the Jones Estate. ROA.003329. The Bankruptcy Court stated that the "purpose for which [the Supplemental Dismissal Order] served was

8

the auction of [FSS's] assets" and "we're not doing that anymore."  *Id.*; *see also* ROA.003322 (stressing that the Supplemental Dismissal Order was entered "to ensure you have the [Chapter 7] Trustee cover that he could sell the assets. That's what the order was intended to do").  Further, because the "[FSS] case [was] closed," and because the Jones Bankruptcy Case "has no impact" on FSS, "there [is] no automatic stay" and the Sandy Hook Families could therefore "pursue whatever it is that they want in judgments [in] state court" without having "to come ask [the Court] for permission."  ROA.003396–97; ROA.003400.

At the same February 5, 2025 hearing, the Bankruptcy Court denied the Chapter 7 Trustee's motion under Rule 9019 to settle the allowed amount of the Sandy Hook Families' claims against Jones and FSS because the FSS Bankruptcy Case had been dismissed and thus there was "no bankruptcy estate to allow a claim against."  ROA.003397.  The Bankruptcy Court stated:  "That case is closed. Which means that [if] someone has a contract dispute with FSS. You don't come to me. You have whatever rights you have outside the bankruptcy. The [Jones] bankruptcy doesn't affect your claims one way or the other."  ROA.003396.   The Bankruptcy Court explained that it was "not going to use the [S]upplemental [Dismissal] [O]rder, which was used for one purpose and one purpose alone" to retain jurisdiction over the FSS Assets.  ROA.003398–99.

**F.  FUAC Tries To Keep Its Bid Alive.**

On February 18, 2025, FUAC filed an *Expedited Motion Requesting Leave to File a Motion Approving the Sale of FSS Assets*.  ROA.003336–40.  FUAC sought to compel the Chapter 7 Trustee to conduct a sale of the FSS Assets and by extension, revive the Supplemental Dismissal Order.  ROA.003338–39.

In response, on March 19, 2025, the Bankruptcy Court reiterated that the Supplemental Dismissal Order was "null and void" (the "Null and Void Order").  ROA.003352.  The Null and Void Order stated that "[t]his Court said at a hearing on February [5], 2025 that it would not allow a sale of FSS assets, and that parties should consider the Court's supplemental order null and void for the reasons stated at the hearing.  Nothing has changed.  The Court won't require the Chapter 7 Trustee to conduct another auction for the FSS assets.  FUAC also does not have standing to seek a sale of FSS assets under Section 363 of the Bankruptcy Code. The motion is denied." *Id.*  No party appealed the Null and Void Order.

On April 28, 2025, Jones and FSS filed a motion requesting reconsideration of the Bankruptcy Court's determination that there would no longer be an auction of the FSS Assets conducted by the Chapter 7 Trustee.  ROA.003353–86.  In the motion, Jones acknowledged that the Supplemental Dismissal Order was no longer in effect, noting that "in a subsequent order entered on February 5, 2025, this Court declared that the Supplemental [Dismissal] Order was 'null and void.' This [m]otion

10

requests reconsideration of that declaration." ROA.003355. He argued that "[h]olding to the position that the Supplemental [Dismissal] Order is void will create past, present and future chaos." ROA.003357. Notwithstanding his explicit recognition of the Null and Void Order, Jones failed to pursue any appellate relief at such time.

## G. The Sandy Hook Families Pursue State Court Remedies.

Following these events, the Sandy Hook Families jointly pursued remedies in Texas state court seeking a receivership in the case styled *Neil Heslin and Scarlett Lewis v. Alex E. Jones and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 before the 261st Judicial District Court of Travis County, Texas (the "State Court Action"). ROA.004099-004110.

Collectively, the Sandy Hook Families' judgments exceed $1 billion and form the basis for enforcement efforts in the State Court Action. *Id.* The Connecticut Families' Judgment has been domesticated in Texas under the Uniform Enforcement of Foreign Judgments Act, Tex. Civ. Prac. & Rem. Code Ch. 35. ROA.003982.

The Sandy Hook Families requested appointment of receiver in Texas state court. The receivership application explicitly noted that the Sandy Hook Families were "*not* seeking any relief that would be inconsistent with the pending Jones [Bankruptcy Case], including seeking any relief with respect to assets that Judgment

11

Debtor Alex Jones owned on or before June 14, 2024, as such assets constitute property of the [Jones Estate]." ROA.004101–02 (emphasis in original).

On August 8, 2025, FSS sought to delay the collection proceedings by filing a check of $10 to act as a bond preventing collection of the Texas Families' Judgment. ROA.005085-005086. In support, FSS attached an affidavit executed by Jones, which relied on the continued viability of the Supplemental Dismissal Order to summarily conclude that FSS has a negative net worth. ROA.005089–92.

On August 11, 2025, Jones and FSS opposed the Sandy Hook Families' applications for a post-judgment turnover order. Once more, they continued to rely on the Supplemental Dismissal Order to argue that the Texas State Court had no authority to grant any relief against FSS. ROA.003518. Jones and FSS specifically argued that all of the FSS Assets are under control of the Chapter 7 Trustee and protected by the automatic stay. Notably, notwithstanding this position, Jones purported to act on behalf of FSS in the State Court Action without notice to, or consent from, the Chapter 7 Trustee. *Id.* Indeed, the Chapter 7 Trustee has *never* supported Jones's position that the FSS Assets are property of the Jones Estate.

On August 13, 2025, a receiver was appointed by the state court with respect to the Connecticut Families' final judgment. ROA.003981–92. The receiver was appointed to take possession and control of the FSS Assets. *Id.*

12

On August 15, 2025, Jones sought to appeal the receivership order and filed an emergency motion to stay the receivership order pending appeal on August 27, 2025. ROA.003996; ROA.004000–25. The Texas Appellate Court granted a temporary stay of the receivership order on August 28, 2025.

While the Sandy Hook Families pursued collection efforts in Texas state court, and while Jones opposed these efforts in Texas state court arguing that they violated the automatic stay, Jones **never** asked the ***Bankruptcy Court*** for relief. Jones never asked the Bankruptcy Court to hold that the state court efforts violated the automatic stay; never asked the Bankruptcy Court to enjoin such actions; and never asked the Bankruptcy Court to hold the Sandy Hook Families in contempt for purportedly violating the automatic stay.

## H. The Sandy Hook Families Seek Clarification From The Bankruptcy Court.

Given Jones's misrepresentations to the Texas state court and the Texas Appellate Court, the Sandy Hook Families filed an emergency motion seeking "reconfirmation" that the FSS Assets are not property of the Jones Estate and therefore not subject to the automatic stay applicable in the Jones Bankruptcy Case. *See* ROA.004728. On October 1, 2025, the Bankruptcy Court held a hearing on the motion, and confirmed on the record that the FSS Assets are "not property of the estate, and it's not subject to the automatic stay. It's just not, and this is a non-debtor asset." ROA.006773. The Bankruptcy Court again explained that "[Jones] can't be

13

surprised that I've said that an asset against a dismissed debtor is not property of the estate. . . . I've also said that parties would be entitled to their collection remedies. I know I've said that on several occasions." ROA.006784–85. With respect to the Supplemental Dismissal Order, the Bankruptcy Court reiterated that it "can deem something to be treated as property of the estate, so Mr. Murray has the authority to go exercise it and try to go sell it. But what I said in the last hearing was I'm not authorizing any sales anymore. So the effect of this order was to void it because I'm not approving any sales." ROA.006760.

Following the hearing, the Bankruptcy Court entered an order reflecting what it had concluded on the record (the "October 1 Order"). ROA.006748–49. The Bankruptcy Court explicitly confirmed that "[t]he automatic stay imposed under Section 362(a) of the Bankruptcy Code in the Jones Bankruptcy Case does not apply to FSS or any of the FSS Assets because these assets are not property of the Jones bankruptcy estate under Section 541 of the Bankruptcy Code." ROA.006749.

On October 8, 2025, Jones filed a motion for reconsideration of the October 1 Order, which the Sandy Hook Families opposed and the Bankruptcy Court denied on November 11, 2025, on the basis that Jones failed to satisfy the requirements for reconsideration under Rules 59 and 60(b). ROA.006799–840; ROA.006970–75; ROA.006977–78. Specifically, the Bankruptcy Court held that there were "no facts or case law overlooked by [the] Court," "no newly discovered evidence," "no

14

substantive mistake in law or fact" in the decision, and "no extraordinary circumstance present or manifest injustice."[10]  ROA.006878.  This appeal followed.

## I. The Bankruptcy Court Orders That The FSS Cash Be Transferred To The State Court Receiver.

On November 14, 2025, the Chapter 7 Trustee asked the Bankruptcy Court for authorization to turnover FSS funds to the court-appointed state court receiver.[11] On December 5, 2025, Jones filed a response to the motion but did not object to the relief requested therein.[12]  On January 9, 2026, the Bankruptcy Court granted the Trustee's *Motion for Authorization for Turnover of FSS Funds to State Court Receiver and Reservation of Rights*, which Jones did not appeal.

## ARGUMENT

## I.   JONES'S APPEAL IS UNTIMELY

Jones's appeal is untimely because (1) the October 1 Order that he now challenges simply "confirm[s]" and "reconfirm[s]" prior rulings of the Bankruptcy Court that Jones did not appeal, ROA.006748–49, and (2) Jones has waived his ability to appeal those determinations.

---

[10] *See Order Denying Motion for Reconsideration and Rehearing of This Court's Order Confirming that FSS Assets are not the Property of the Estate of Alexander E. Jones and Not Subject to the Automatic Stay [Dkt. No. 1251] and Renewed Request for the Pending Relief of a Private Sale of the FSS Assets for Cash*, Jones Bankruptcy Case [Docket No. 1271].

[11] *See Trustee's Motion for Authorization for Turnover of FSS Funds to the State Court Receiver*, Jones Bankruptcy Case [Docket No. 1274] ("Trustee Turnover Request").

[12] *See Alexander E. Jones Response to Trustee's Motion for Authorization for Turnover of FSS Funds to State Court Reservation of Rights [Dkt. No. 1274] and Alexander E. Jones Reservation of Rights*, Jones Bankruptcy Case [Docket No. 1282] ("Jones Turnover Response").

***First***, under the guise of challenging the Bankruptcy Court's refusal to reconsider its October 1 Order, Jones attempts to reassert to a new audience the same arguments that the Bankruptcy Court has previously rejected in hopes of a better outcome. Jones claims that the October 1 Order "conclusively" determined that the FSS Assets are not property of the Jones Estate and that it "resolves a discrete legal issue central to the administration of the Jones Estate and is therefore final and appealable[,]" suggesting that this was the ***first time*** the Bankruptcy Court had made such a determination. Jones Br. at 2.[13] This argument mischaracterizes the October 1 Order. The October 1 Order explicitly ***reconfirms*** three conclusions that the Bankruptcy Court has rendered repeatedly for over a year, namely, that: (1) the Supplemental Dismissal Order is "null and void and is of no force or effect"; (2) the FSS Assets "are not property of the [Jones] Chapter 7 Estate"; and (3) "any automatic stay applicable in the Jones Bankruptcy Case does not apply to FSS or its assets[.]" ROA.006748. Jones ignores these prior rulings and instead seeks to rewrite the procedural history of this case by relying solely on the record pre-dating the Supplemental Dismissal Order (*i.e.*, pre-September 2024). In doing so, Jones completely omits any discussion of the extensive ***subsequent*** history following the

---

[13] Notably, Jones and FSS elected to seek reconsideration of the October 1 Order rather than appeal it directly. ROA.006799.

16

Supplemental Dismissal Order, which culminated in the October 1 Order.[14]  *See*

Jones Br. at 20–30.  Specifically, he ignores:

- ***February 5, 2025 Hearing***.  During a hearing on February 5, 2025, the Bankruptcy Court expressly declared that Supplemental Dismissal Order was "null and void" because the "purpose for which [the Supplemental Dismissal Order] served was the auction of [FSS's] assets" and "we're not doing that anymore."  ROA.003329.  It further explained that because the "[FSS] case [was] closed," and because the Jones Bankruptcy Case "has no impact" on FSS, "there [is] no automatic stay" and the Sandy Hook Families could therefore "pursue whatever it is that they want in judgments in state court" without having "to come ask [the Court] for permission."  ROA. 003325–26.  The Bankruptcy Court stressed that the Supplemental Dismissal Order was entered "to ensure you have the [Chapter 7] Trustee cover that he could sell the assets.  That's what the order was intended to do."  ROA.003322.  The Bankruptcy Court also indicated that vacating the Supplemental Dismissal Order promoted "the finality of the bankruptcy process so that [the Sandy Hook Families] can pursue whatever it is that they want in judgments in state court[.]"  ROA.003329.

- ***Null and Void Order***.  On March 19, 2025, the Bankruptcy Court reiterated that the Supplemental Order was null and void in its order denying FUAC leave to file a motion approving the sale of the FSS Assets.  ROA.003352.  The Null and Void Order stated that "[t]his Court said at a hearing on February [5], 2025 that it would not allow a sale of FSS assets, and that parties should consider the Court's supplemental order null and void for the reasons stated at the hearing.  Nothing has changed.  The Court won't require the Chapter 7 Trustee to conduct another auction for the FSS assets.  FUAC also does not have standing to seek a sale of FSS assets under Section 363 of the Bankruptcy Code. The motion is denied."  *Id*.  ***Jones did not appeal the Null and Void Order***.

- ***October 1, 2025 Hearing***.  On October 1, 2025, the Bankruptcy Court confirmed that the FSS Assets are "not property of the estate, and it's not subject to the automatic stay. It's just not, and this is a non-debtor asset."

---

[14] Although Jones briefly mentions the February 2025 Hearing in his recitation of the facts, he steers clear of recounting any of the Bankruptcy Court's holdings and reasoning on the record, instead choosing to cherry-pick and mischaracterize a few statements made by the Bankruptcy Court. (Jones Br. at 11.)

17

ROA. 006773. The Bankruptcy Court again explained that "[Jones] can't be surprised that I've said that an asset against a dismissed debtor is not property of the estate. . . . I've also said that parties would be entitled to their collection remedies. I know I've said that on several occasions." ROA.00678–-85. With respect to the Supplemental Dismissal Order, the Bankruptcy Court reiterated that it "can deem something to be treated as property of the estate, so Mr. Murray has the authority to go exercise it and try to go sell it. But what I said in the last hearing was I'm not authorizing any sales anymore. So the effect of this order was to void it because I'm not approving any sales." ROA.006760.

- ***October 1 Order***.  In its subsequent order, the Bankruptcy Court explicitly confirmed that "[t]he automatic stay imposed under Section 362(a) of the Bankruptcy Code in the Jones Bankruptcy Case does not apply to FSS or any of FSS's assets because these assets are not property of the Jones bankruptcy estate under Section 541 of the Bankruptcy Code."  ROA.006748–49.

In short, the Bankruptcy Court has repeatedly, unequivocally, and "conclusively" ruled that the Supplemental Dismissal Order served one limited purpose (facilitating a sale the Bankruptcy Court has since disallowed) and Jones failed to seek appellate review.  *See* Jones Br. at 2.  The time for Jones to challenge these determinations passed months before Jones filed the present appeal.

In April 2025—six months before this appeal was filed—Jones acknowledged that the Bankruptcy Court ruled the Supplemental Dismissal Order null and void and that judicial relief was necessary, by filing his Motion for Reconsideration of the Null and Void Order and stating that "in a subsequent Order entered on February 5, 2025, the Bankruptcy Court declared that the Supplemental [Dismissal] Order was 'null and void.' This [m]otion requests the reconsideration of that declaration." ROA.003353–86. Further, Jones argued that "[h]olding to the position that the

18

Supplemental Dismissal Order is void will create past, present and future chaos." ROA.003357. This current appeal is nothing more than a woefully belated attempt to muddy the Bankruptcy Court's crystal clear holdings and should be rejected whole-cloth by this Court.

**Second**, Jones's consistent inaction in the Jones Bankruptcy Case means he has waived his right to appeal these holdings in any event. The procedure for noticing an appeal from a bankruptcy court "is more demanding than noticing an appeal from a district court." *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 293 (5th Cir. 2022) (quoting *Fadayiro v. Ameriquest Mortg. Co.*, 371 F.3d 920, 922 (7th Cir. 2004)). The notice of appeal itself must be filed within 14 days of the order or judgment being appealed. Fed. R. Bankr. P. 8002(a)(1). And the notice of appeal must "be accompanied by the judgment—or the appealable order or decree—being appealed." Fed. R. Bankr. P. 8003(a)(3)(B). When a party includes some but not all orders related to an issue, the notice will deprive an appellate court of jurisdiction over the omitted orders. *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th at 293. Furthermore, although the Bankruptcy Court has the exclusive authority to enforce the automatic stay in the Jones Bankruptcy Case, Jones never sought relief from the Bankruptcy Court to enjoin the Sandy Hook Families' state court collection efforts or to hold them in contempt for such purported violations. Jones's willingness to make these arguments to the Texas state

court—which lacks jurisdiction to enforce the automatic stay—and unwillingness to make these arguments to the Bankruptcy Court reflect his fundamental understanding of the Bankruptcy Court's prior rulings that the FSS Assets were not protected by the automatic stay. Where a party fails to assert its rights—namely, by bringing to the Bankruptcy Court's attention an alleged violation of the automatic stay—it waives its right to appeal. *Jackson v. Bank of Am., N.A.*, No. 3:13CV581-LG-JCG, 2014 WL 5511017, at \*5-6 (S.D. Miss. Oct. 31, 2014). Despite myriad opportunities to seek to enforce the Jones Bankruptcy Case automatic stay against the FSS Assets before the Bankruptcy Court itself, Jones has only elected to raise the issue in the ongoing state court proceedings instead. For example, Jones took no action to enforce the automatic stay in the Jones Bankruptcy Case when the Connecticut Families filed its Texas State Court action to collect against the FSS Assets—rather, he waited until the Sandy Hook Families sought clarification from the Bankruptcy Court. More recently, Jones did not expressly object to the Chapter 7 Trustee's request for authorization to transfer FSS's assets to the state court receiver, he only asserted a "reservation of rights."[15] Jones's (in)actions in Bankruptcy Court speak louder than words in Texas state court.

For more than a year, Jones has had ample opportunity to appeal the Bankruptcy Court's holding that the FSS Assets are not property of the Jones Estate

---

[15] *See* Jones FSS Turnover Response [Docket No. 1282].

and subject to its automatic stay.  He failed to do so, and should not be rewarded for these tactics by this Court considering this untimely appeal.

## II.    JONES DOES NOT HAVE STANDING TO APPEAL

Jones does not have standing to appeal the Bankruptcy Court's determination that the FSS Assets are excluded from the Jones Estate because he has no pecuniary interest in the FSS Assets. Jones, a Chapter 7 debtor, can demonstrate standing to challenge an order only by showing that he was directly or adversely affected pecuniarily by the order, or that the order diminished his property, increased his burdens, or impaired his rights.  *See In re Solomon*, Nos. 96-11201, 96-11528, 96-11529, 1997 WL 680934, at *6 n.10 (5th Cir. Sept. 25, 1997); *see also In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (Isgur, J.).  Jones cannot demonstrate either of these requirements.

First, Jones has no pecuniary interest in the FSS Assets.  The Sandy Hook Families hold more than $1.3 billion in judgements against FSS and Jones, of which more than $1 billion are final judgments and $974 million against Jones has been found nondischargeable by the Bankruptcy Court.  ROA.004100.  When the Chapter 7 Trustee auctioned the FSS Assets, only two bidders participated and the top bid at the auction was less than $10 million.  ROA.001024.  On these facts, there is no remotely reasonable prospect that Jones has any remaining interest in either the FSS Assets *or* the other assets in the Jones Estate. *See In re Okorie*, No. 24-60255, 2024

21

WL 4471734, at *2 (5th Cir. Oct. 11, 2024) (equity interest holder may only be party in interest if "there exists a possibility that there will be a surplus after payment of claims[]" (internal quotation marks and citation omitted)); *In re Ghatanfard*, 666 B.R. 14, 21–22 (S.D.N.Y. 2024).   This is especially the case now that the Connecticut Judgments are final following the Supreme Court's denial of Jones's writ of certiorari, which has foreclosed any potential of Jones's pecuniary interest in the FSS Assets for good.[16]   Accordingly, Jones cannot be directly or adversely affected pecuniarily by the October 1 Order.

Jones also cannot demonstrate that the October 1 Order diminished his property, increased his burdens, or impaired his rights—in fact he does not even try to.   He half-heartedly complains that "if allowed to stand, millions of dollars will have been spent attempting to sell assets by a BK Trustee who had no right to sell those assets because the Trustee didn't own them," but the only parties harmed thereby would be Jones' creditors (*i.e.*, the Sandy Hook Families).   Jones Br. at 5. Jones also vaguely asserts that the October 1 Order "alters substantive rights," but offers no further justification.   Jones Br. at 5, 37, 51.

The only party that does have proper standing to challenge the Bankruptcy Court's determination that the FSS Assets are not property of the Jones Estate is the Chapter 7 Trustee.   Only "parties in interest" have standing to appeal a bankruptcy

---

[16] *See Jones v. Lafferty*, No. 25-268, 607 U.S. __ (2025) (Certiorari Denied Order List).

court order, and courts uniformly recognize that "a trustee, as the representative of the bankruptcy estate, is [a] party in interest[.]" *In re Okorie*, 2024 WL 4471734, at *1 (internal quotation marks and citation omitted). Here, the Chapter 7 Trustee does not challenge the Bankruptcy Court's determination that the FSS Assets are not property of the Jones Estate—in fact, he did the opposite by requesting the Bankruptcy Court authorize the turnover of the FSS Assets to the state court receiver.[17] That the Chapter 7 Trustee does not agree with Jones that the FSS Assets are part of the very estate the Chapter 7 Trustee is administering speaks volumes.

In short, Jones has no pecuniary interest in the FSS Assets and is not "very likely" to have such an interest in the future; accordingly, Jones lacks standing to pursue the relief sought in this appeal.

## III.   IS IT BLACK LETTER LAW THAT THE FSS ASSETS ARE NOT PROPERTY OF THE JONES ESTATE

Clear, black letter law establishes that the FSS Assets are not property of the Jones Estate, notwithstanding that the Jones Estate owns 100% of the equity interests in FSS.

A non-debtor entity's assets are not part of the debtor's bankruptcy estate, even if the debtor holds equity in that non-debtor entity. *In re Guyana Dev. Corp.*, 168 B.R. 892, 905 (Bankr. S.D. Tex. 1994) (while "property of the estate includes

---

[17] *See* Trustee Turnover Request [Docket No. 1274].

the debtor's stock in a subsidiary[,]" "[a]s a general rule," the estate does not include "the assets of the subsidiary"); *In re Maples*, 529 F.3d 670, 672 n.1 (5th Cir. 2008) (Garza, J., concurring in part and dissenting in part) ("Courts and leading treatises have recognized that a debtor's equitable or beneficial interest as a shareholder is insufficient to allow corporate assets to be placed in the debtor's bankruptcy estate.").

The reasoning is simple: an ownership interest in a corporation is limited to shares of the corporation, not the corporation's assets. *In re Mandel*, Adv. No. 10-40219, 2017 WL 1207503, at *21 (Bankr. E.D. Tex. Mar. 31, 2017), *aff'd*, No. 4:17-CV-262, 2019 WL 6930339 (E.D. Tex. Dec. 19, 2019), *aff'd*, No. 20-40026, 2021 WL 3642331 (5th Cir. Aug. 17, 2021) ("the assets of the non-debtor entities" are not property of the estate "because the debtor/shareholder is not the owner of the property of the corporation. The property interest of the debtor and the debtor's estate is limited to the stock certificates" (citation omitted)). This reflects the fundamental principle of corporate separateness. *See Durham v. Accardi*, 587 S.W.3d 179, 184 (Tex. Ct. App. 2019) ("A corporation is presumed to be a separate entity from its officers and shareholders" in the context of alleged corporate negligence); *Hicks v. Texas*, 419 S.W.3d 555, 558 (Tex. Ct. App. 2013) ("the assets [of a corporation], including the cash residing in corporate bank accounts, are owned by the corporation, and the latter is a separate legal entity from its shareholders," in

24

a criminal theft case applying Texas state property law).  Texas law maintains

corporate separateness even where the shareholder is a sole owner.  *See*, *e.g.*,

*Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 373 (Tex. Ct. App. 2010)

("[M]ere control and ownership of all the stock of a corporation is not a sufficient

basis for ignoring the corporate fiction."); *In re Murchison*, 54 B.R. 721, 728 (Bankr.

N.D. Tex. 1985) ("Even where, as here, one hundred percent of a subsidiary's stock

is owned by the shareholder in question, that shareholder has not acquired, and has

no property interest in, specific assets of the subsidiary.").

Accordingly, as scores of cases make clear, the FSS Assets are not property

of the Jones Estate, even if Jones's equity in FSS is an asset of the Jones Estate.

Jones does not supply a single case holding otherwise.

## IV. THE BANKRUPTCY COURT'S ORDERS DID NOT RENDER THE FSS ASSETS PROPERTY OF THE JONES ESTATE

Jones devotes over 10 pages of his brief to various theories as to why the

Bankruptcy Court's orders displaced this clear and well-settled blackletter law.

Jones Br. 20–31.  All fail.  None of the Bankruptcy Court's orders did—or even

purported to—make the FSS Assets property of the Jones Estate.  The Dismissal

Order transferred only "control and signing authority" over FSS's bank accounts to

the Chapter 7 Trustee.  The Supplemental Dismissal Order "deemed" the FSS Assets

to vest—but did not actually vest or transfer them—in the Jones Estate for purposes

of facilitating an asset sale.  Because the FSS Assets were never property of the Jones

25

Estate, the Null and Void Order and the October 1 Order are irrelevant to whether the FSS Assets are property of the FSS Estate or protected by the automatic stay in the Jones Bankruptcy Case.

**A.    The FSS Assets Did Not Become Jones Estate Property Under The Dismissal Order.**

The Dismissal Order did not transfer any ownership of the FSS Assets—it only transferred discrete rights (bank account control and signing authority) to the Chapter 7 Trustee.

While section 349(b)(3) of the Bankruptcy Code ordinarily "revests" property of the estate in the debtor upon dismissal, a bankruptcy court has broad discretion to condition the dismissal of a case on which property will revert (or not) to the debtor. *See* 11 U.S.C. § 349(b)(3); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 466 (2017) ("[R]ead in context, [section 349(b)] appears designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'" (citation omitted)); *In re Gonic Realty Trust*, 909 F.2d 624, 627–28 (1st Cir. 1990) (not an abuse of discretion to hold estate funds in escrow after dismissal until resolution of a lawsuit in another court); *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 590–91 (7th Cir. 2009) (within court's discretion under section 349(b) to order that debtor's relinquishment of lien remained binding on the debtor after dismissal).

Using that discretion, the Bankruptcy Court authorized the FSS CRO to "transfer control and signing authority with respect to the Debtor's bank accounts to" the Chapter 7 Trustee. App. A, ROA.000156. The Bankruptcy Court did this so that Jones would not be able to loot the funds in FSS's accounts at the expense of the Sandy Hook Families. The Dismissal Order did not transfer any assets to the Jones Estate or take any other action with respect to the FSS Assets. Accordingly, pursuant to section 349 of the Bankruptcy Code, all FSS Assets reverted to FSS upon dismissal (and not to the Jones Estate), subject to the Dismissal Order's mandate that the Chapter 7 Trustee have control and signing authority over the FSS bank accounts.

### B.    The FSS Assets Did Not Become Jones Estate Property Under The Supplemental Dismissal Order.

The Supplemental Dismissal Order similarly did not transfer the FSS Assets into the Jones Estate.

In an effort to facilitate a sale process—the only issue on which all parties in the case agreed—and to address the United States Trustee's concern, *see supra* at 10, the Bankruptcy Court entered the Supplemental Dismissal Order, which provided that the FSS Assets were "deemed to have vested in the [Jones Estate], as property of the estate pursuant to Section 541 and shall be under the control of the [Chapter 7 Trustee]." App. B, ROA.000285. Critically, the Supplemental Dismissal Order did not actually transfer or vest any FSS Assets in the Jones Estate; it only "deemed" them to have vested for the limited purpose of enabling a sale process and

27

giving the United States Trustee comfort that the Chapter 7 Trustee could sell the FSS Assets and not just the equity in FSS. *Id*.

The Bankruptcy Court's order "deeming" the FSS Assets to be property of the Jones Estate is not the equivalent of an order transferring those assets to the Jones Estate—a distinction confirmed by how courts construe the word "deemed" elsewhere in bankruptcy law. For example, in *In re Hot'z Power Wash, Inc.*, the bankruptcy court held that language in a bankruptcy plan providing that creditors would be "deemed to have accepted" the plan if they did not vote contravened Bankruptcy Rule 3018(c)'s requirement that parties actually cast a vote in writing. 655 B.R. 107, 113–14 (Bankr. S.D. Tex. 2023); *see also In re Bressler*, No. 20-31024, 2021 WL 126184, at *4 (Bankr. S.D. Tex. Jan. 13, 2021) (only ballots actually cast in favor of a plan—not those "deemed" to accept or reject—qualify for purposes of calculating plan "numerosity" requirements). A bankruptcy court order "deeming" that an event occurred—for example, that a vote was cast—is thus not the same as that event actually occurring. Black's Law Dictionary also recognizes this precise distinction, defining "deem" as "to treat as if it were really something else" and to "have qualities that it does not have." *Deem*, *Black's Law Dictionary* (12th ed. 2024). Accordingly, the word "deem" in the Supplemental Dismissal Order presupposes that the FSS Assets were not property of the Jones Estate, and it does nothing to actually transfer those assets to the Jones Estate. On the other hand,

if the FSS Assets were *actually* transferred to the Jones Estate, then the word "deem" would have been wholly superfluous in the Supplemental Dismissal Order. *See In re Durand-Day,* 134 F.4th 846, 855 (5th Cir. 2025) (highlighting "presumption that different language carries different meaning" and rejecting statutory reading that would render certain terms superfluous). In entering the October 1 Order, however, the Bankruptcy Court made clear that the word "deem" was not superfluous, but that instead it represented a fiction that the assets would be treated if they were property of the Jones Estate even though they were not legally property of the Jones Estate. ROA.006760. Accordingly, even to the extent use of the word "deemed" is ambiguous (and it is not), the Bankruptcy Court is entitled to deference in its interpretation of the Supplemental Dismissal Order. *See In re AKD Invs.*, 79 F.4th 487, 493 (5th Cir. 2023) ("In these circumstances, we apply a deference rule: As long as the bankruptcy court reasonably resolved the ambiguity as it construed the Order in weighing [lender's] motion for summary judgment in this case, we defer to that court's interpretation.").

Jones's brief—which focuses on the word "vest" in the Supplemental Dismissal Order—therefore misses the point. *See* Jones Br. at 30. Jones cites to *In re Lopez*, 897 F.3d 663, 669 (5th Cir. 2018) for the proposition that "vesting" means "to confer ownership of property on a person." Jones Br. at 30. But this wholly ignores that the Bankruptcy Court only "deemed" that the FSS Assets vested in the

29

Jones Estate—a concept entirely distinct from actually vesting the assets in the Jones Estate. Jones cites no authority for his implicit contention that those concepts are identical. Accordingly, the Supplemental Dismissal Order also did not alter the Bankruptcy Code's default outcome that the FSS Assets reverted to FSS upon dismissal (subject to the terms of the Bankruptcy Court Orders).

Because the FSS Assets were never property of the Jones Estate, the Bankruptcy Court's Null and Void Order and October 1 Order did nothing to affect whether the FSS Assets are property of the Jones Estate. The Bankruptcy Court properly denied reconsideration of its decision that the FSS Assets were not protected by the automatic stay applicable to the Jones Estate.

## V.    THE COURT DID NOT ABUSE ITS DISCRETION BY NOT REQUIRING THE TRUSTEE TO CONDUCT A SUBSEQUENT SALE OF FSS ASSETS

Jones's argument that the Bankruptcy Court abused its discretion by failing to require the Chapter 7 Trustee to order a subsequent sale of the FSS Assets is not supported by a single legal authority.

Premised on his incorrect conclusion that the Dismissal Order and Supplemental Dismissal Order "recogniz[ed] [the FSS] [A]ssets had vested in the estate and were subject to sale," Jones argues that the Bankruptcy Court abused its discretion when it declined to require a live auction of the FSS Assets. Jones Br. at 44–45. Jones does not cite a single case to support the proposition that a bankruptcy

30

court has the authority to force a Chapter 7 trustee to sell property in some particular manner, and there is none.  Because the Bankruptcy Court did not have the authority to order the Chapter 7 Trustee to conduct an asset sale, it could not have abused its discretion by failing to do so.  And even if it were permitted to force this sale, the FSS Assets were not property of the Jones Estate.  *See supra* at 27–34.  The Bankruptcy Court had no authority to order the Chapter 7 Trustee to sell property that is not property of the Jones Estate.  For all of the foregoing reasons—though any one would suffice—the Bankruptcy Court did not abuse its discretion by failing to require the Chapter 7 Trustee to order a sale of the FSS Assets.

## **CONCLUSION**

For the foregoing reasons, the Sandy Hook Families respectfully request that this Court enter an order affirming the Bankruptcy Court's order below.

Dated: April 27, 2026

Respectfully Submitted,

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Jennifer J. Hardy*
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Fax: (713) 510-1799
E-mail: jhardy2@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Stuart R. Lombardi (admitted *pro hac vice*)
Allison A. Berkowitch (*pro hac vice* forthcoming)
Deanna Drenga (*pro hac vice* forthcoming)
787 Seventh Avenue New York, NY 10019
Telephone: (212) 728-8000
Fax: (212) 728-8111
E-mail: slombardi@willkie.com
ddrenga@willkie.com
aberkowitch@willkie.com

**LAWSON & MOSHENBERG PLLC**
Avi Moshenberg
State Bar No. 24083532
801 Travis Street, Suite 2101, #838
Houston, TX 77002
Telephone: (713) 449-9644
E-mail: avi.moshenberg@lmbusinesslaw.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin
State Bar No. 24070221
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0388
Fax: (713) 576-0301
E-mail: jbmartin@bradley.com

*Co-Counsel to the Texas Families*

**CAIN & SKARNULIS PLLC**

/s/ *Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (*pro hac vice* forthcoming)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kyle J. Kimpler (*pro hac vice* forthcoming)
Paul Paterson (*pro hac vice* forthcoming)
Daniel S. Sinnreich  (*pro hac vice* forthcoming)
Vida J. Robinson (*pro hac vice* forthcoming)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
ppaterson@paulweiss.com
dsinnreich@paulweiss.com
virobinson@paulweiss.com

*Co-Counsel to the Connecticut Families*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellees' Brief has been served on counsel for all parties receiving or entitled to notice through CM/ECF on April 27, 2026.

*/s/ Jennifer J. Hardy*
Jennifer J. Hardy