## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
|    **Alexander E. Jones** | § | **Bankruptcy Case No. 25-33553** |
|    **Debtor** | § | |
| _____ | § | |
| | § | |
| **ALEXANDER E. JONES AND** | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | |
|    *Appellants,* | § | |
| | § | **Civil Action No. 4:25-cv-05553** |

On Appeal from the United States Bankruptcy Court
for the Southern District of Texas, Houston Division
Cause No. 25-05553

## APPELLANTS' <span style="color:red">CORRECTED</span> [1] REPLY BRIEF

Shelby A. Jordan
Antonio Ortiz
**Jordan & Ortiz, P.C.**
State Bar No. 11016700
Federal Bar No. 2195
500 N. Shoreline, Suite 804
Corpus Christi, Texas 78401
Telephone: (361) 884-5678
Fax: (361) 888-5555
Email: sjordan@jhwclaw.com
     aortiz@jhwclaw.com
copy to: cmadden@jhwclaw.com

Ben C Broocks
St. Bar No. 03058800
Federal Bar No. 94507
William A. Broocks
St. Bar No. 24107577
Federal Bar No. 3759653
**Broocks Law Firm, PLLC**
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Telephone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
     wbroocks@broockslawfirm.com

**ATTORNEYS FOR APPELLANTS**

---

<span style="color:red">[1] After filing the Reply, it was discovered that an insert with the material Fifth Circuit case of *R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801 (5th Cir. 2012) was inadvertently omitted through a scrivener's error.  The insert has been added to page 20 and is in red font.  The TOC and TOA page numbering and the word count have been updated accordingly.  No other changes have been made to the original Reply.</span>

**Table of Contents**

| | | |
|---|---|---|
| I | THE PIVOTAL ISSUE IN THIS APPEAL IS THE SUPPLEMENTAL ORDER --WHAT IT DID AND ITS CONTINUED VIABILITY | 8 |
| II | NO STATEMENTS MADE AT THE FEBRUARY 2025 HEARING COULD OR DID CHANGE THE SUPPLEMENTAL ORDER | 14 |
| III | THE OCTOBER ORDER IS VOID FOR A HOST OF REASONS APPELLEES DO NOT ADDRESS | 20 |
| IV | PLAINTIFFS CANNOT FILE A MOTION SEEKING RELIEF AS TO JONES AND FSS AND THEN CLAIM JONES AND FSS CANNOT APPEAL AN ADVERSE RESULT | 22 |
| V | *IN RE CAJUN ELEC. POWER CO-OP., INC.*, 69 F.3D 746, 749 (5TH CIR. 1995) DEFINITIVELY ESTABLISHES STANDING FOR JONES AND FSS | 23 |
| | CONCLUSION AND PRAYER FOR RELIEF | 27 |

**Table of Authorities**

*Anderson v. Hutson,*                                                    21
   114 F.4th 408, 415 (5th Cir. 2024)

*BLOM Bank SAL v. Honickman,*                                            21
   605 U.S. 204 (2025)

*Forrest Gen. Hosp. v. Azar,*                                           12
   926 F.3d 221(5th Cir. 2019)

*Griggs v. Provident Consumer Disc. Co.,*                               17
   459 U.S. 56 (1982)

*In re Cajun Elec. Power Coop.,*                                      18, 23
   69 F.3d 746 (5th Cir. 1995)

*In re Cyrus II P'ship,*                                                24
   358 B.R. 311 (Bankr. S.D. Tex. 2007)

*In re Ghatanfard,*                                                     24
   666 B.R. 14 (S.D.N.Y. 2024)

*In re Lopez,*                                                        passim
   897 F.3d 663 (5th Cir. 2018)

*In re Murchison,*                                                      13
   54 B.R. 721 (Bankr. N.D. Tex. 1985

*In re Transtexas Gas Corp. v. TransTexas Gas*,                         17
   303 F.3d 571 (5th Cir. 2002)

*Moore v. Tangipahoa Par. Sch. Bd.,*                                    21
   864 F.3d 401, 405 (5th Cir. 2017)

*Okorie v. Citizens Bank (In re Okorie),*                             24, 27
   2024 U.S. App. LEXIS 25700, (5th Cir. 2024)

*R.P. v. Alamo Heights Indep. Sch. Dist.*,                              20
   703 F.3d 801 (5th Cir. 2012)

*Solomon v. Milbank (In re Solomon),*                                   24
   1997 U.S. App. LEXIS 41462 (5th Cir. 1997)

*Weight Watchers Int'l v. Luigino's, Inc.,*                             21
   423 F.3d 137, 141-42 (2d Cir. 2005)

3

11 U.S.C. §349(b)                                                                          13

*Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal*    11
*Texts 63 (2012)*

This appeal arises from a bankruptcy court order dated October 1, 2025 (herein, the "October Order") that was the result of a motion filed by the Connecticut and Texas Plaintiffs (collectively, "Appellees" or "Plaintiffs"). ROA.003507 (the "October Motion").[2] The bankruptcy court held a hearing on Plaintiffs' October Motion (the October hearing and its transcript are referred to as the "October Transcript"). ROA.006751. The October Order states that it was issued "For the reasons stated on the record..." referring to the October Transcript. ROA.006749.

Although this appeal relates to the October Order, the October Motion makes it crystal clear that the issue Appellees were bringing to the bankruptcy court was the continued viability of the bankruptcy court's order of September 2024 ("Supplemental Order") which stated in its entirety:

---

### ORDER SUPPLEMENTING ORDER DISMISSING CASE
#### [Related to Docket No. 956]

1.      Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").

2.      The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.

Signed: September 25, 2024

_Christopher M. Lopez_
Christopher Lopez
United States Bankruptcy Judge

---

[2] Plaintiffs' filed the Motion herein called the "October Motion" on September 26, 2025. Because of the plethora of motions, transcripts of hearings on motions, and resulting orders, the term "October Motion" is used purely for convenience to attempt to avoid further confusion.

Plaintiffs' October Motion did not assert that the Supplemental Order had not judicially conveyed ownership of FSS assets to the Jones Bankruptcy Estate via 11 USC §349 or that the §349 judicially conveyance was only a "deemed" conveyance. Rather, Plaintiffs' October Motion was premised entirely on the claim that in a hearing on February 5, 2025, the bankruptcy court had declared the Supplemental Order null and void and reaffirmed this thereafter in an order issued in March 2025, in response to a third-party's request for an auction of FSS assets.

Furthermore, Plaintiffs October Motion repeatedly claimed that Jones and FSS had taken positions in the state trial and appellate courts that the Supplemental Order had continued viability, which positions "have sown chaos and confusion regarding" the continued viability of the Supplemental Order [ROA.003508] and was creating " ongoing confusion and the inequitable use of a void order to frustrate lawful state-court enforcement efforts" [ROA.003524-25]. Appellees proclaimed that relief against Jones and FSS was "necessary because Jones and FSS have repeatedly told Texas state courts that FSS's assets are property of the Debtor's chapter 7 estate (the "Chapter 7 Estate"), [and] that the Order Supplementing Order Dismissing Case remains operative ..." [ROA.003509]. Plaintiffs' October Motion was directed at Jones and FSS, who responded and attended and participated in the hearing embodied in the October Transcript. ROA.006751.

Substantively, their October Motion asked the bankruptcy court to (a) interpret its Supplemental Order as null and void [ROA.003521-22 [¶¶43-45] and (b) alternatively if the Supplemental Order was still effective, to grant them relief under FRCP 60(b)(6) solely on the grounds that in February 2025 the bankruptcy court declared the Supplemental Order null and void, Appellees writing in their October Motion:

6

48.    This case presents exactly the kind of extraordinary circumstances that Rule 60(b)(6) was designed to address. The Supplemental Dismissal Order was expressly entered to give the Chapter 7 Trustee authority to sell the assets of FSS. The Court has since stated, both on the record and in subsequent rulings, that the Supplemental Dismissal Order is "null and void" because the contemplated sale of such assets will not occur pursuant to a Bankruptcy Court process. *See* Hr'g. Tr. 14:13–16, 14:22–24, Feb. 5, 2025.

ROA.003524. The October Motion concluded with a prayer, asking that the bankruptcy court enter an order "reconfirming that the Supplemental Dismissal Order has no force or effect" as a result of which "FSS's assets are not property of the Chapter 7 Estate" and because FSS assets were not property of the Jones Bankruptcy Estate, "any automatic stay applicable in the Jones Bankruptcy Case does not apply to FSS or its assets." [ROA.003525]

At the ensuing October hearing, to the surprise of all in attendance, the bankruptcy court never addressed the on-going validity or viability of the Supplemental Order or the impact thereon of any statements allegedly made by the bankruptcy court in February 2025. Rather the bankruptcy court stated that it had never judicially conveyed FSS assets to the Jones BK Estate, but merely only "deemed" them conveyed. [ROA.006757-59, 006769-70, 006775-76]. As a fallback position, the bankruptcy court said the Supplemental Order's additional permission for the BK Trustee to operate FSS assets for one year under §721, somehow meant any judicial conveyance had only

7

been for one year. [ROA.006772, 006781]. Denying the motion to reconsider filed by Jones and FSS, this appeal ensued.

I.    **THE PIVOTAL ISSUE IN THIS APPEAL IS THE SUPPLEMENTAL ORDER --WHAT IT DID AND ITS CONTINUED VIABILITY**

Appellees' Response is significant primarily for (a) what it does not address and (b) for its errors in what it does address.

Their October Motion repeatedly references, directly and indirectly, that the Supplemental Order did in fact convey FSS assets, but clings to the bankruptcy court's statements in the February 2025 hearing -- which as addressed hereafter, Appellees mischaracterize -- as rendering that conveyance "null and void." *See, e.g.*, ROA.003510, ¶7 ("Although this Court previously entered the Supplemental Dismissal Order, which ordered that FSS's assets would 'be deemed to have vested in the [Debtor's] bankruptcy estate,' it subsequently ordered that such order was 'null and void.'").  Their agreement that FSS assets were in fact transferred echoes what the Texas Plaintiffs stated as their basis for appealing the Supplemental Order which they had done within days of its issuance: [3]

> 14.    On September 25, 2024, the Bankruptcy Court entered the Supplemental Dismissal Order on the FSS docket. (Bankr. Dkt. 1021). This Supplemental Dismissal Order clarified that as of the entry of the original Dismissal Order, all property of FSS was deemed to have vested in the bankruptcy estate of its 100% equity owner, Alex Jones, as property of that estate under the control of the Chapter 7 Trustee. *Id.*

---

[3] Texas Plaintiffs' Notice of Appeal of the Supplemental Order and Statement of Issues on Appeal are found respectively at  BK Dkt. 1029 and BK Dkt. 1033, BK Case No. 22-60043.

Furthermore, the Connecticut Plaintiffs had agreed in their intervention in that appeal that FSS's

assets had been judicially conveyed via §349:[4]

> 14.    On September 25, 2024, the Bankruptcy Court entered the Supplemental
> Dismissal Order on the FSS docket. (Bankr. Dkt. 1021). This Supplemental Dismissal
> Order clarified that as of the entry of the original Dismissal Order, all property of FSS
> was deemed to have vested in the bankruptcy estate of its 100% equity owner, Alex
> Jones, as property of that estate under the control of the Chapter 7 Trustee. *Id.*

In fact, the very turnover order the Connecticut Plaintiffs induced the Texas trial court to sign

states both the continued viability of the Supplemental Order and that it, along with the June Order,

actually vested all FSS assets with the Jones BK Estate [ROA 6736-6747]: [5]

> **The Court also FINDS that** Judgment Debtor Free Speech Systems, LLC filed
> for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the
> FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy
> Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in
> the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in
> the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its
> assets and bank accounts. *See* Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25,
> 2024), No. 22-60043 (Bankr. S.D. Tex.). Accordingly, the Application only seeks relief
> relating to the following (cumulatively, the Turnover Property):
>> (i)    as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only
>> to approval of the Trustee).

In their Response, Appellees now jettison their prior positions and instead claim the

Supplemental Order did not transfer FSS assets, but only "deemed" them to have vested:

> "The Supplemental Dismissal Order similarly did not transfer the FSS Assets into the
> Jones Estate.... Critically, the Supplemental Dismissal Order did not actually transfer or

---

[4] Dkt. 8; Case No. 24-60043 [ROA 6158].

[5] The Connecticut Plaintiffs would later contend that inclusion of this language was a "typo" but this order still remains outstanding and the Connecticut Plaintiffs have offered no explanation of how this "typo" occurred.

vest any FSS Assets in the Jones Estate; it only 'deemed' them to have vested for the limited purpose of enabling a sale process and giving the United States Trustee comfort that the Chapter 7 Trustee could sell the FSS Assets and not just the equity in FSS."  Response, p. 30-31.

This positional sea-change is a transparent "Hail Mary" that not only contradicts what they have continuously asserted in filing after filing, it contradicts what the Fifth Circuit has explained is the function of 11 USC §349 in *In re Lopez*, 897 F.3d 663, 669 (5th Cir. 2018).  Appellees superficially analyze *In re Lopez* as focusing only on the term "vest," but claim that case does not address the term "deemed," which Appellees now claim transforms a §349 order into some kind of conditional, event-limited vesting, with an implied termination and re-vesting based on unstated conditions.  Nonsense.  Appellees would lead this Court into error.

To the contrary, *In re Lopez* analyzes §349, which statutory provision reads as follows:

## § 349. Effect of dismissal

\*\*\*

((b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]—

   \*\*\*

   (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title

*In re Lopez* involved a debtor/family's homestead property that had been sold while their bankruptcy was pending.  The family wanted some of the proceeds of sale for surgery.  The bankruptcy court stated that if the family/debtor dismissed their bankruptcy filing they could have all the proceeds, but would not get a discharge, which the family/debtor did over the protest of the bankruptcy trustee.  The district court reversed the holding of the bankruptcy court and agreed with the bankruptcy trustee that even though the family/debtor had dismissed their filing, the bankruptcy trustee should nevertheless receive all sale proceeds for distribution to creditors.  The

Fifth Circuit reversed the district court and proceeded with a detailed analysis of §349, focusing on the terms "vest" and "revest."  After quoting §349, the Fifth Circuit defined those terms using Black's Law Dictionary as follows:

> Black's Law Dictionary defines "vest" to mean, in relevant part: "[t]o confer ownership (of property) on a person"; "[t]o invest (a person) with the full title to property"; or "[t]o give (a person) an immediate, fixed right of present or future enjoyment." VEST, Black's Law Dictionary (Bryan A. Garner ed., 10th ed. 2014). To "revest" means "[t]o clothe or vest again or anew, as with rank, authority, or ownership." REVEST, Black's Law Dictionary. Thus, the ordinary meanings of both "vest" and "revest" are broad.

897 F.3d at 669.  The Fifth Circuit went on to explain that upon dismissal of a bankruptcy filing, a court's choices are essentially binary.  As applied here, when a debtor, such as FSS is dismissed from bankruptcy, its "vested" assets "revested" in the debtor, unless ordered otherwise.  Given the Fifth Circuit's explained meaning of the term "vest" as to "confer ownership of property on a person; to invest a person with the full title to property; or to give a person an immediate, fixed right of present or future enjoyment,"  (cleaned up) it is clear there is no statutory room for partial, vesting/revesting, or conditional vesting/revesting.

Furthermore, interpreting the phrase "deemed" to have a limiting meaning when used with the expansive definition of the term "vest," negates meaning of the "vest."  As the Fifth Circuit explained, "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."  897 F.3d 663, 669-670 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63 (2012)).

In actually defining the term "deemed," the Fifth Circuit has again referred to Black's Law dictionary stating it means:

> "1) To treat something as if (a) it were really something else, or (b) it has qualities that it does not have (although the document was not in fact signed until April 21, it explicitly states that it must be deemed to have been signed on April 14)  (2) to consider, think, or judge (she deemed it necessary).  'Deem' has been traditionally, considered to be a useful

word when it is necessary to establish a legal fiction of positively by 'deeming' something to be what it is not or negatively by deeming something not to be what it is…..."

*Forrest Gen. Hosp. v. Azar,* 926 F.3d 221, 231 n.61 (5th Cir. 2019).   This definition of "deemed" when coupled with Fifth Circuit's analysis of §349 and its terms, simply means the Supplemental Order "deemed" ownership of FSS's assets to have been judicially transferred, as opposed to a transfer by means of a bill of sale, gift, or other traditional mechanism of transfer.[6]

And reading the Supplemental Order in this fashion is not only consistent with every prior statement the Plaintiffs have ever made on the Supplemental Order -- until their Response Brief -- but it is in harmony with the bankruptcy court's statements at the September 2024 hearing which gave birth to the Supplemental Order, which statements have been liberally excerpted in Appellants Opening Brief, two of which are particularly clear:

> THE COURT: <u>That was always the intent. Right?</u> ... <u>But I'm just saying that was always the intent. Everybody knew.</u> ..<u>I'm more than happy to clarify in my order that all the assets -- if it didn't include it in the assets, that's why he has the cash, right</u>? ... He's got everything. <u>That was always the intent as to what was going on</u>...<u>I just think we're getting in the technicalities here. But that certainly was what I ordered at the time.</u> [p.24]
>
> \*\*\*\*\*
>
> THE COURT: Mr. Wolfshohl [*BK Trustee counsel*], what about that?... <u>I'm going to give you [*i.e., the BK Trustee*] all the assets of FSS. I'm going to clarify that that's what you [*i.e. the BK Trustee*] always had, the assets of FSS. And I just want to make sure that other people look at it so that no one then -- I sign something and then somebody comes in and asks me to reamend the order</u>... [p.26–27]

---

[6] This is consistent with the Court's interpretation of the term "deem," which the Court articulated at the May 8, 2026 hearing to mean: "It means to treat something as if it were really something else or that it has qualities that it does not have."

ROA.896-898, 904, 905, 906-7.  And while nothing else is required to demonstrate the unlimited nature of the Supplemental Order, the coup de grâce to the Appellees' nonsensical, revisionist position is the statement made by counsel for the United States Trustee, Mr. Nguyen, confirming that an unconditional §349 conveyance was intended and satisfied the objection of the US Trustee:[7]

> MR. NGUYEN:  Your Honor, if you clarify the order to include all of FSS hard assets as property of the estate, the U.S. Trustee won't have any objection.  I think you are able -- you have discretion under 349 to order otherwise. As long as that order is clear, we're fine with that.

Notably, the Response is silent on these and every other statement made at the seminal September 24, 2024 hearing.

The Response expends significant time on addressing irrelevant aspects of fundamental Texas corporate law.  Yet they cite no case, where assets of a wholly owned subsidiary company cannot be "deemed vested" in a parent under §349.  Moreover, even were that a viable issue, when the Texas Plaintiffs' appeal of the Supplemental Order was voluntarily dismissed, any questions about that issue became moot and established as a matter of law. [8]

---

[7] Sep. 24, 2024 BK Hearing Transcript; ROA 906

[8] *In re Murchison,* 54 B.R. 721 (Bankr. N.D. Tex. 1985), has no bearing on §349 conveyances.  Unlike *Murchison* this case therefore does not concern whether ordinary principles of corporate separateness prevented non-debtor assets from becoming estate property in the absence of a court order but the legal effect of the Bankruptcy Court's own operative order purporting to vest and administer those assets as estate property the appeal of which was dropped.

## II.    NO STATEMENTS MADE AT THE FEBRUARY 2025 HEARING COULD OR DID CHANGE THE SUPPLEMENTAL ORDER

Apart from Appellees' last-minute emphasis on the term "deemed," nothing the bankruptcy court said or did at the hearing in February 2025 could or did reflect a decision to return FSS assets to FSS.

First, Appellees misquote the bankruptcy court's comments at the February 2025 hearing. There he said not that the Supplemental Order was null and void, but any future use was null and void [ROA.3329]:

> No, you don't have to say anything.  I know what the rights are.  And I'm not -- so you can consider any use of the supplemental order null and void, because the purpose for which it served was the auction of the assets, and we're not doing that anymore.  I don't trust the process.  I would have to do it -- me, myself -- and I'm not overseeing it.

The bankruptcy court said this in frustration because after rejecting the concocted scheme entered by the BK Trustee with the Plaintiffs that caused the bankruptcy court to reject the auction in December 2024.  At the conclusion of the December 2024 proceedings, that the court stated it wanted FSS assets sold -- no more games. In February 2025, the court recounted it has said this [ROA.3324]:

So the sale didn't happen, and I said, I don't want any more contingencies. If there's going to be a sale of assets, then cash will be king. But if there's confu- -- if there's -- gets complicated, like it was last time, where you had IP assets, and people weren't bidding against each other.

But then at the February2025 hearing, there was no sale to approve, but rather the Texas and Connecticut Plaintiffs had concocted a bogus settlement -- an earlier version of what Appellants asked this Court to order be produced -- which settlement was both not what the bankrtuptcy court had ordered and on its face, untenable to the bankruptcy court for a host of reasons:

15

So, now the Trustee is asking me to approve a 9019 settlement where I'm allowing over $400 million of claims against Free Speech. And now the Texas families are saying that the matter that they very much appealed, they're now embracing. The supplemental order is now embraced.

The Trustee who asked me for a specific order for a specific purpose is now using that order. But it was only for one purpose, to see if he could sell the assets. To now use those words, knowing what we did and why we did it, and everybody was in the room when we did it. Ha Nguyen was here. The U.S. Trustee was sitting right there telling me.

So, now it's going to be expanded to then allow $480 million worth of claims against an entity in a case that I dismissed. I'm being asked to allow claims -- allow -- and allow is bankruptcy buzzword 101.

ROA.003327. The court was saying it gave the Trustee the Supplemental Order to sell FSS assets and he was using it to effect a bogus settlement that contemplated "allowing" over $400 million in bankruptcy claims against FSS who had been dismissed and the court had no way of "allowing" such claims. Thus, the bankruptcy court was genuinely expressing concerns that the BK Trustee and Plaintiffs were misusing his order.

Had the court's reaction been due to the academic reason that the auction failed, that happened on December 10, 2024; there would have been no reason to wait until February 2025 to express sentiments prompted by events over two months prior. In fact, at a hearing in June, 2025,

16

the court explained what it was attempting to do in February [June 5, 2025 Transcript, p. 40; ROA 3475]

> What I intended to say and certainly communicate to the parties is conducting -- well, I can't, I'm not going to force the trustee to put up another sale, put on auction. The trustee can exercise business judgment, but here are the matters, here are the things the trustee needs to think about before we bring another motion for the sale of the assets. And here's a laundry list of issues that I've got.

So the bankruptcy court did not "negate" the Supplemental Order. But the bankruptcy court could not have negated or voided the Supplemental Order even had it wanted to for numerous well established legal reasons. While the Response only mentions it in passing in a footnote, Appellees do admit that that the Texas Plaintiffs had appealed the Supplemental Order in October 2024, shortly after its entry. [Response, 7, FN 9]. Thus, alterations of any kind were precluded by FRCP 60(a), which expressly states that after appeal an order cannot be changed in any way, even to correct clerical errors: "But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." Appellees do not address this.

Neither do they address the case law prohibitions on altering a final order while it is on appeal. See *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (explaining that the filing of a notice appeal confers exclusive jurisdiction on the appellate court and divests the lower court over issues involved in the appeal.) Thus, even had the bankruptcy court said in February

17

2025 it was negating the Supplemental Order, because of the pending appeal, such statements and actions would have been unquestionably void. *In re Transtexas Gas Corp. v. TransTexas Gas*, 303 F.3d 571, 579 (5th Cir. 2002). Appellees neither mention nor discuss these authorities.

Additionally, Appellees neither mention nor discuss the June 2025 hearing where the bankruptcy court itself not only said it had lost jurisdiction to change the Supplemental Order in February 2025, but made clear that it was considering the terms on which a future sale could occur-- a physical impossibility if the Supplemental Order regarding §349 vesting of FSS assets in the Jones BK Estate had suddenly evaporated in February 2025 [June 5, 2025, p. 40, ROA 3475]:

somebody wants to buy the equity, which someone can always do in Chapter 7. I read your pleadings and I think -- I went back and listened to it, and I'll take the blame for not being incredibly as precise as I should have been.

The matter was currently pending. That order was currently pending on appeal at the time, so I couldn't revoke one way or the other, right? Once bankruptcy, once an appeal is filed, the Court loses jurisdiction over that.

\*\*\*\*\*

Trustee is going to have to think about whether I approve any sale process because it would have to be conducted by me. It would have to be cash only and we'd have to sort out all the intellectual property issues. So I don't want someone buying something -- and I expressed this a while back -- and then showing up six months later in state court and someone suing them because they really didn't own something that I sold and so I haven't revoked anything. I didn't have authority to do it anyway, but to me, putting up another auction process would be incredibly complicated, incredibly

Appellees' Response seems to suggest that Appellants should have appealed the bankruptcy courts musings found in the transcript of the February 5, 2025 hearing, but there was no order entered to appeal and at the very worst, the court's musings were interlocutory. But even more fundamentally, there would have been nothing to appeal given that in June, the court itself acknowledged it had no jurisdiction to alter the Supplemental Order in February 2025. In a worst case scenario, even had the court said what Appellees claim, FRCP 60 allowed the court on its

own to correct that which it did in June 2025. [9] Again, these points are totally unaddressed by Appellees.

While it is a bit unclear, their Response seems to suggest that in appealing the denial of the Motion to Reconsider the October Order, somehow Appellants erred.  That is not the law.  In *R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 808-809 (5th Cir. 2012) (internal citations and quotations omitted; cleaned up), the Fifth Circuit plainly rejected that position holding:

> "Under the Federal Rules of Appellate Procedure, the notice of appeal must designate the judgment, order, or part thereof being appealed. Fed. R. App. P. 3(c)(1)(B).  This court treats notices of appeal relatively liberally where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party.  We have specifically treated appeals of 59(e) motions for reconsideration as appeals of the underlying judgment when the intent to do so was clear.  The purpose of the notice of appeal is to provide sufficient notice to the appellees and the courts of the issues on appeal.  So long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with.  Here, AHISD has not asserted it was prejudiced by R.P.'s notice of appeal, which stated that it was an appeal from the 'Order Denying Motion for Reconsideration.' Therefore, determining whether to treat R.P.'s notice of appeal as an appeal from the underlying judgment turns on whether the intent to appeal the merits of the judgment was apparent."

Appellees' Response does not contain the word "prejudice" and they have briefed the issues as fully as the adverse facts will allow, conclusively demonstrating the appeal of the merits of the October Order was and is apparent.

III.    **THE OCTOBER ORDER IS VOID FOR A HOST OF REASONS APPELLEES DO NOT ADDRESS.**

The fact that Appellees had appealed the Supplemental Order is jurisdictionally significant for the additional reason that once Appellees dismissed their appeal in May 2025, that order became a final order that could not be collaterally attacked or changed even by the bankruptcy court itself.   Appellees' October Motion asked the bankruptcy court to (1) "interpret" its

---

[9] Appellees also criticize Appellants for not appealing a March 2025 order that Appellants were not even a party to. That fact, coupled with the court's own actions in June, would have rendered any appeal unnecessary.

Supplemental Order as null and void and (2) to act under FRCP 60(b)(6) to do the same thing. Aside from the fact that the October Order did neither, both requests were legally improper and invalid.

Apart from the fact that upon dismissal of their appeal, the Supplemental Order because unassailable, to "interpret" the Supplemental Order as null and void, almost exactly one year after its issuance, is not an interpretation, but a modification.  The Fifth Circuit has made this abundantly clear. *Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024) (internal quotes omitted; cleaned up) ("Interpretation, then, is not modification .... taking a practical view of modification, we look beyond the terms used by the parties and the district court to the substance of the action.").  *See also Moore v. Tangipahoa Par. Sch. Bd.*, 864 F.3d 401, 405 (5th Cir. 2017).  Other circuits hold the same. *Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 141-42 (2d Cir. 2005).

As to Appellees' request for relief under FRCP 60(b)(6), the Supreme Court's recent decision in *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (June 5, 2025) demonstrates the utter unavailability of FRCP 60(b)(6).  After repeatedly emphasizing FRCP 60(b)(6) "requires extraordinary circumstances" [*Id*. at 210] and "is available only in narrow circumstances," [*Id*. at 211], the Supreme Court juxtaposed two different cases to further explain just how extraordinary the circumstances must be:

> The Court identified such circumstances for the first time in *Klapprott v. United States*, decided shortly after Rule 60(b)(6)'s adoption. There, the petitioner sought to set aside a default judgment entered in denaturalization proceedings. His allegations set up an extraordinary situation: The petitioner was in jail . . ., weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, and disturbed and fully occupied in efforts to protect himself against the gravest criminal charges in separate proceedings. He was therefore no more able to defend himself in the denaturalization proceedings than he would have been had he never received notice of the charges. On these facts, the Court found that relief under Rule 60(b)(6) was justified.
>
> The Court underscored the stringency of the extraordinary circumstances test a year later in *Ackermann v. United States*. The petitioner there had suffered an adverse

21

denaturalization judgment and declined to appeal.   Four years later, he sought to vacate the judgment under Rule 60(b)(6), alleging that it was erroneous, and that he had declined to appeal due to expense and the advice of a third party.   The Court held these circumstances insufficient to satisfy Rule 60(b)(6)'s strict standard. Compared to the situation in *Klapprott*, the *Ackermann* petitioner's allegations highlighted the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.   The Court emphasized the importance of a Rule 60(b)(6) movant's faultlessness, explaining that there must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Id* at 211-212 (internal citations and quotations omitted; cleaned up).   Here Appellees had even appealed the Supplemental Order and dropped that appeal.    There are no extraordinary circumstances.

## IV.    PLAINTIFFS CANNOT FILE A MOTION SEEKING RELIEF AS TO JONES AND FSS AND THEN CLAIM JONES AND FSS CANNOT APPEAL AN ADVERSE RESULT.

Plaintiffs' standing argument is fundamentally inconsistent with the very relief they sought below. The October 1 proceedings were not abstract administrative matters involving only the Chapter 7 Trustee. Plaintiffs themselves affirmatively sought relief directed at both Jones and FSS. Their October Motion expressly requested rulings concerning whether the FSS Assets were property of the Jones bankruptcy estate and whether the automatic stay protected those assets from collection activity. In doing so, Plaintiffs named both Jones and FSS—not merely the Chapter 7 Trustee[10]—as the parties against whom relief was sought. Jones and FSS both appeared and responded to the motion. ROA.006371. At the October 1, 2025 hearing, undersigned counsel appeared on behalf of both Jones and FSS. ROA.006751. The Bankruptcy Court then entered the October Order directly, albeit incorrectly, adjudicating the rights and interests of Jones and FSS with respect to the FSS Assets, the automatic stay, and the scope of the Jones bankruptcy estate.

---

[10] Appellees claim certain positions for the BK Trustee, but provide no record cites.

Having affirmatively invoked the Bankruptcy Court's jurisdiction to obtain relief against Jones and FSS, Plaintiffs now take the untenable position that neither Jones nor FSS may appeal the adverse order Plaintiffs themselves procured. That position is nonsensical. Plaintiffs cannot: (a) file a motion seeking substantive relief against Jones and FSS; (b) obtain an order adjudicating Jones's and FSS's rights and interests; (c) use that order offensively against Jones and FSS in Texas state court; and then (d) argue that Jones and FSS lack standing to challenge the very order entered against them.

The Fifth Circuit's "person aggrieved" standard does not permit such gamesmanship. An appellant has standing where a bankruptcy order "diminished its property, increased its burdens or impaired its rights." *In re Cajun Elec. Power Coop.*, 69 F.3d 746, 749 (5th Cir. 1995). The October Order plainly did so. It declared that the FSS Assets were not property of the Jones estate, eliminated asserted automatic-stay protections, authorized collection efforts outside the bankruptcy process, and stripped away the estate-related treatment previously afforded those assets under the Supplemental Dismissal Order. Plaintiffs themselves are actively relying upon the October Order in Texas state court against Jones and FSS and contesting the use by Jones/FSS of the Supplemental Order. Appellees cannot simultaneously claim that the October Order has operative legal consequences against Jones and FSS while arguing that those same parties are insufficiently affected to appeal it. The October Order therefore directly affected Jones's legal and pecuniary interests, making him a proper appellant under settled Fifth Circuit law.

## V.    IN RE CAJUN ELEC. POWER CO-OP., INC., 69 F.3D 746, 749 (5TH CIR. 1995) DEFINITIVELY ESTABLISHES STANDING FOR JONES AND FSS

First, notably Appellees make no contention FSS has no standing, as they only address Jones's standing.  Response at p. 21 ("Jones does not have standing to appeal the Bankruptcy Court's determination that the FSS Assets are excluded from the Jones Estate...");  p. 21 ("First,

Jones has no pecuniary interest in the FSS Assets."); p. 22 ("Jones also cannot demonstrate that the October 1 Order diminished his property, increased his burdens, or impaired his rights...). The omission is telling because the October 1 Order plainly operated directly against both Jones and FSS.

Appellees only cite four cases,[11] two of which are Fifth Circuit cases, *Solomon v. Milbank (In re Solomon),* 1997 U.S. App. LEXIS 41462, * 21, n.10 (5th Cir. 1997) and *Okorie v. Citizens Bank (In re Okorie)*, 2024 U.S. App. LEXIS 25700, (5th Cir. 2024). Appellees miscite both Fifth Circuit cases, each of which deal with separate issues. When properly read, both establish standing for Jones and FSS.

What is at issue here is ownership and control of FSS assets, not the proceeds of their sale or whether those proceeds will satisfy Appellees unlawful, unconstitutional Connecticut judgment which they claim is so large, that Jones is hopelessly insolvent and cannot pay. Appellees thus attempt to reduce the standing inquiry to a single question of whether Jones can ultimately receive a surplus distribution after liquidation. Fifth Circuit law is broader than that, however. Where ownership and control of assets is the issue, the Fifth Circuit has plainly stated that is enough to confer bankruptcy standing.

Appellees citation to *In re Solomon* specifically directs the Court to footnote 10 of that case, for the test for bankruptcy standing. In pertinent part the "test" Appellees urge this Court to employ reads as follows:

> "To have standing to appeal a bankruptcy order, a debtor must show that he was directly or adversely affected pecuniarily by the order, or that the order diminished his property, increased his burdens, or impaired his rights. *Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co., Inc. (In re Cajun Elec. Power Coop., Inc.),* 69 F.3d 746, 748 (5th Cir. 1995)..."

---

[11] The two non-Fifth Circuit cases are *In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007), which is a 2007 bankruptcy court opinion and *In re Ghatanfard*, 666 B.R. 14, 21–22 (S.D.N.Y. 2024), a district court case from New York. Clearly the Fifth Circuit cases are the only truly potential relevant authorities.

That standard squarely establishes standing here.

In *Cajun Electric*, the debtor utility owed approximately $1.6 billion to the Rural Utilities Service ("RUS"), a federal creditor. After the Louisiana Public Service Commission ordered Cajun to lower its rates, Cajun became unable to satisfy its massive debt obligations and filed Chapter 11 bankruptcy. RUS and other creditors then sought appointment of a trustee. The creditors argued Cajun lacked standing to appeal because it was "hopelessly insolvent." The Fifth Circuit expressly rejected that argument as "without merit." *Cajun Elec.*, 69 F.3d at 749. Critically, the Fifth Circuit held that Cajun had standing because the appointment of a trustee deprived Cajun of "all the rights it had as a debtor-in-possession, including the right to operate its business." *Id.* The court concluded: "Clearly, it was aggrieved by losing the right to run itself." *Id.* Notably, it is undisputed Jones is the Manager of FSS; and the Supplemental Order not only protected FSS assets, it gave the BK Trustee one year to operate those assets, before operational control reverted to Jones as the Manager.

Like the debtor in *Cajun Electric*, Jones and FSS challenge an order stripping away protection, control and administration over business assets. The October Order declared that the FSS Assets were not property of the Jones estate, removed asserted bankruptcy protections from those assets, authorized outside collection efforts, and effectively displaced the prior estate-based administration established by the Supplemental Order. Those consequences directly impaired Jones's and FSS's rights concerning ownership, control, administration, and disposition of the FSS Assets and insured that a state "constable sale" would occur instead of a sale supervised by a United States bankruptcy court.

Importantly, *Cajun Electric* demonstrates that standing does not disappear merely because creditors contend the debtor is "hopelessly insolvent" or because a surplus distribution may

ultimately be unlikely. Instead, the Fifth Circuit recognized that impairment of control and property rights itself creates standing. This principle is especially applicable here because the October proceedings directly concerned the ownership status of the FSS Assets. Plaintiffs' motion was framed broadly as a request for relief from the Supplemental Order—the very order that confirmed the FSS Assets were deemed "vested" in the Jones bankruptcy estate pursuant to 11 U.S.C. § 349 and subject to administration through the Jones estate. Appellees sought to undo that prior ruling and obtain a contrary adjudication regarding ownership and estate status of the FSS Assets.

The ownership/control issue could not be more central to Jones and FSS. Jones was indisputably the sole member and sole manager of FSS. The Supplemental Order directly addressed the status and administration of FSS Assets within the Jones bankruptcy estate. Plaintiffs then sought relief overturning that framework. At a minimum, the October Motion functioned as a de facto request for declaratory relief directed at Jones and FSS concerning ownership and control of the FSS Assets.

Moreover, *In re Lopez* confirms the significance of the Supplemental Order's vesting language. The Fifth Circuit explained that "vest" means:

> "to confer ownership of property on a person; to invest a person with the full title to property; or to give a person an immediate, fixed right of present or future enjoyment." *Id.* (cleaned up).

Thus, the October 1 proceedings did not involve some abstract or collateral dispute. They directly targeted the legal status, ownership, and administration of the FSS Assets previously vested in the Jones estate. This case therefore differs fundamentally from cases involving only disputes over distributions from already-liquidated assets or speculative claims to downstream sale proceeds. Jones and FSS are not attempting to assert rights belonging to third parties or merely

disputing allocation of sale proceeds in which they possess no direct interest. Rather, they challenge an order adjudicating ownership and control over assets themselves—assets that had not yet been liquidated and that previously had been treated as property of the Jones estate.

Appellees' reliance on the unpublished opinion of *Okorie v. Citizens Bank (In re Okorie),* 2024 U.S. App. LEXIS 25700, (5th Cir. 2024) is misplaced. There, the debtor sought years later to unwind completed asset sales based on conclusory allegations of undervaluation and generalized assertions of harm to creditors and the estate. The Fifth Circuit emphasized that the debtor failed to show any direct financial effect flowing from the challenged order itself. Here, by contrast, the October Order itself immediately altered the legal status, administration, and control of assets previously treated as subject to the Jones bankruptcy estate and the Chapter 7 Trustee's authority. Jones therefore asserts a direct injury to his own legal and pecuniary interests—not speculative or derivative injuries belonging to creditors or third parties.

Finally, Plaintiffs' own conduct confirms standing. Plaintiffs specifically named Jones and FSS in their October Motion, sought affirmative relief against them, obtained the October Order against them, and are now attempting to wield that Order offensively against Jones and FSS in Texas state court. Appellees also recite matters in controversy between them occurring in state courts.

Having invoked the Bankruptcy Court's jurisdiction to obtain relief directly affecting Jones's and FSS's property rights and business control, Plaintiffs cannot now plausibly argue that Jones and FSS are insufficiently aggrieved to appeal the resulting order.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Appellants request that this Court enter an order, reversing the Bankruptcy Court's October Order, and for such other and further relief to which Appellants may be justly entitled, both at law and in equity.

27

Dated:  May 13, 2026

Respectfully submitted,

/s/ Ben C. Broocks

_____

Ben C Broocks
State Bar No. 03058800
Federal Bar No. 94507
William A. Broocks
State Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM P.L.L.C.
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com

Shelby A. Jordan
State Bar No. 11016700
Federal Bar No. 2195
Antonio Ortiz
State Bar No. 24074839
Federal Bar No. 2195
JORDAN & ORTIZ, PC.
500 N. Shoreline Blvd., Suite 804
Corpus Christi, Texas, 78401
Phone: (361) 884-5678
Fax:    (361) 888-5555
Email: sjordan@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**CO-COUNSEL FOR APPELLANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2026, a true and correct copy of the foregoing document was sent via electronic mail to all counsel and parties listed on the Court's ECF filing system.

*/s/ Ben Broocks*

Ben Broocks

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Bank. R. 8015(a)(7)(B)(i) because it contains 5552 words, excluding the parts of the brief exempted by Bank. R. 8015(g).

/s/ Ben Broocks
Ben Broocks